649 F.2d 610
 107 L.R.R.M. (BNA) 2756, 91 Lab.Cas. P 12,776
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MOVING PICTURE AND PROJECTION MACHINE OPERATORS UNION, LOCAL
NO. 143, affiliated with the International Alliance of
Theatrical Stage Employees and Moving Picture Machine
Operators of the United States and Canada, AFL-CIO, Respondents.
 No. 80-1517.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 9, 1981.
Decided May 27, 1981.
 
 John H. Goffstein, Jeffrey E. Hartnett, Russell A. Willis, III, St. Louis, Mo., for Respondents.
 Richard B. Bader, N. L. R. B., Washington, D. C., Elaine Patrick, National Labor Relations Board, Washington, D. C., for petitioner; Debra N. Diener, Law Clerk, of counsel.
 Before HEANEY and HENLEY, Circuit Judges, and PECK,* Senior Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 The National Labor Relations Board found that the Motion Picture and Machine Operators Union, Local No. 143, had violated Sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(1)(A) & (b)(2) by refusing to refer David Brueske for employment through its exclusive hiring hall because he was not a member of the Union. It entered an order requiring the Union to cease and desist from refusing, for discriminatory reasons, to register or refer Brueske or other employment applicants and from maintaining an exclusive hiring arrangement or practice with any employer in which Union members receive preference in hiring or referral over nonmembers. The Board also ordered the Union to register Brueske for referral, to refer him for employment on a nondiscriminatory basis, to make him whole for loss of earnings and to post appropriate notices. The Board now asks this Court to enforce its order. We modify the Board's order and enforce it as modified.
 
 
 2
 The Union has a collective bargaining agreement with the movie theaters in the St. Louis area. Under that agreement, employees are required to become and remain members of the Union on and after the 30th day following the beginning of their employment. While the agreement does not provide for an exclusive hiring arrangement, the Union does operate a hiring hall and, as a matter of practice, the theater operators hire only those persons who are referred to them for employment by the Union. It is thus clear that the Union operated an exclusive hiring hall and is obligated to comply with Sections 8(b)(1)(A) and 8(b)(2) of the Act.[1]
 
 
 3
 The Union maintains a card file with a card for each theater in the St. Louis area. Each card notes the name of each projectionist who has been referred by the Union to that theater and the time he has spent training or working there. The Union also maintains a list of projectionists which states the amount of time that each projectionist has spent working or training at the theaters to which he or she has been referred. Those who are on the list are either members of the Union or in the training programs sponsored by the Union. Vacancies in permanent positions are posted at the Union Hall for two weeks. Anyone who is on the projectionist list can bid for the vacancy and the bidder who is shown by the list to have worked the longest period of time is referred to the employer for the job if he or she is qualified.
 
 
 4
 Referrals to temporary jobs are made from the same list. Only those who have worked or trained at the theater making the request are considered and selection from among those eligible is based on an attempt to equal out their yearly earnings.
 
 
 5
 The Union conducts a training program through which persons are placed at various theaters without pay to become proficient at running the equipment usually for a period of one to four weeks. After a trainee has worked at a theater for the required period of time, he or she may be referred to that theater for paid employment. Meanwhile, training at other theaters continues. After a trainee has completed the training program at each of the theaters with whom the Union has an agreement, the trainee is requested to join the Union.
 
 
 6
 Anyone is eligible to apply for training. Applications are screened by a committee of the Union which selects a number of candidates to be interviewed and evaluated when there are openings. The committee makes recommendations to the membership of the Union which accepts or rejects the selections by a majority vote.
 
 
 7
 Questions about the legality of the Union's referral system were brought to the Board's attention by David Brueske. Brueske had worked as a projectionist in New York from 1971 until 1975 and was a member of the New York Local Union during much of that period. In late 1975, Brueske withdrew from the Local and moved to East St. Louis, where he enrolled in Southern Illinois University. While at the University, Brueske did additional work with projection equipment. On April 19, 1979, Brueske contacted the business agent of Local No. 143 about obtaining work as a projectionist. He was told about the Union's training program. Thereafter, Brueske, along with sixty others, made application to be included in that program. He was interviewed by the committee but was not accepted. Eleven others were. On July 19, 1979, he filed an unfair labor practice charge against the Union. The Board concluded that the Union's referral system was operated in an unlawful manner because referrals were based on Union membership considerations. It entered the order described in the first paragraph of this opinion.
 
 
 8
 In our view, substantial evidence on the record as a whole supports the Board's finding that the Union operated an exclusive hiring hall. While the collective bargaining agreement did not require the employers to hire only those persons recommended by the Union, the fact is that they consistently followed this practice over a number of years. See N.L.R.B. v. International Union of Operating Engineers, 279 F.2d 951 (8th Cir. 1960). Something more is required, however, before a violation of Sections 8(b)(1)(A) and 8(b)(2) of the Act can be found. The Board must prove that the Union refused to refer applicants who were not members of the Union because they were not members. N.L.R.B. v. Local 542, 542A and 542B, Int'l Union of Operating Engineers, 485 F.2d 387 (3d Cir. 1973); N.L.R.B. v. Hod Carriers, Local 300, 336 F.2d 459 (9th Cir. 1964), or that the Union allowed only Union members access to its hiring hall, N.L.R.B. v. Local 269, IBEW, 357 F.2d 51 (3d Cir. 1966); Local 138, Int'l Union of Operating Engineers v. N.L.R.B., 321 F.2d 130 (2d Cir. 1963). Our question then is whether the Board carried its burden. We think that it did in part. Substantial evidence supports the Board's finding that only Union members were referred to employers for permanent jobs. Brueske testified that the Union's business agent told him that he "could not qualify for permanent jobs without being a union member, having two years seniority and then permanent jobs would go out on a bid basis and the employer would have some preference among men who knew the booths." While there is evidence to the contrary in the record, we accept the Board's credibility findings on this matter.
 
 
 9
 Substantial evidence does not support the Board's finding, however, that the Union refused to refer non-Union members to temporary jobs. To the contrary, the record shows conclusively that trainees who were not members of the Union were frequently referred to temporary jobs. Moreover, it shows that applicants were accepted for the training program without regard to Union membership or affiliation. Furthermore, there is no evidence that the Union committee or membership gave preference to the relatives or friends of Union members or for that matter that they applied any standard other than the stated standard of availability, reliability and competence in selecting persons for the training program. There is, finally, no evidence that the Union gave preference to Union members over trainees in referring persons for temporary employment.
 
 
 10
 It follows from what we have said that the Union violated Sections 8(b)(1)(A) and 8(b)(2) of the Act by refusing to refer nonmembers of the Union for permanent employment. The Board order must be enforced insofar as it relates to permanent employees but cannot be insofar as it relates to temporary employees or trainees. Paragraphs 1(a) and 1(b) of the Board's order will, therefore, be amended to read as follows:
 
 
 11
 Moving Picture and Projection Machine Operators Union, Local No. 143, affiliated with the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO, its officers, agents, successors, and assigns, shall:
 
 
 12
 1. Cease and desist from:(a) Refusing to register for referral or refer David Brueske, or any other applicant, for permanent employment by theaters in the St. Louis, Missouri, area, for discriminatory reasons.
 
 
 13
 (b) Maintaining, enforcing, or otherwise giving effect to an exclusive hiring arrangement or practice with any employer pursuant to which Union members receive preference in hiring or referral over nonmembers for permanent employment.
 
 
 14
 One additional matter requires consideration. The Board's order requires the Union to register David Brueske for referral and to refer him for employment on a nondiscriminatory basis and make him whole for any loss of earnings he may have suffered from the discrimination against him. The Board's order must, on the basis of what we have heretofore said, be enforced insofar as it requires the Union to register David Brueske for referral for permanent employment and refer him for permanent employment[2] on a nondiscriminatory basis; i. e., if he is as well qualified as others on the list, he must be referred for permanent employment on the same basis as those who are members of the Union. The Board's order as to back pay must also be enforced, subject to one qualification. An evidentiary hearing must be held to determine whether Brueske was in fact as well qualified as others on the referral list. If he was as well qualified, then a determination will have to be made as to the earnings he lost by not being referred on a nondiscriminatory basis. If he was not, he is not entitled to such remuneration. This hearing can, of course, be a part of the compliance conference.
 
 
 15
 The Board's order is enforced as modified. Costs will be taxed to the Union.
 
 
 
 *
 JOHN W. PECK, U. S. Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 (b) It shall be an unfair labor practice for a labor organization or its agents
 (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * *
 (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership * * *.
 29 U.S.C. §§ 158(b)(1)(A) & (b)(2).
 
 
 [2]
 The Board's order does not speak to the issue of whether Brueske should be admitted to the training program. Indeed, the Board conceded at oral argument that the training program was not violative of the Act if selections are made on the basis of objective criteria and there is no basis in the record to suggest that they were not