**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 575, AFL–CIO, Respondent.**

**No. 84–5626.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 22, 1985.

Decided Oct. 8, 1985.

Elliott Moore, Jesse Gill (argued), Deputy Associate General Counsel, Washington, D.C., for NLRB.

William K. Shaw (argued), Portsmouth, Ohio, for respondent.

Before LIVELY, Chief Judge; and MERRITT and CONTIE, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement pursuant to 29 U.S.C. § 160(e) of a cease and desist order requiring Local 575, International Brotherhood of Electrical Workers, to cease requiring travelers, members of other IBEW locals, to resubmit qualification letters at six-month intervals at the Local 575 hiring hall and from denying complainant Arvil Stevens access to hiring hall records in violation of 29 U.S.C. § 158(b)(1)(A). For the reasons that follow, we grant the petition for enforcement.

**I.**

Complainant Arvil Stevens filed a charge with the Board alleging that Local 575 had violated 29 U.S.C. § 158(b)(1)(A) by requiring travelers to resubmit documentation of their qualifications when they sought to use the hiring hall more than six months after they have been off the out-of-work list. Local 575 members need not submit such information since, as members of the Local, the documentation of their qualifica-

tions is a part of the Local's permanent records. Further, Stevens alleged that the Local unlawfully denied him access to inspect the referral books.

The collecting bargaining agreement between Local 575 and the National Electrical Contractors Association provides in Article VI:

> In the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment:
>
> Section 1. The Union shall be the sole and exclusive source of referral of applicants for employment.
>
> Section 2. The Employer shall have the right to reject any applicant for employment.
>
> Section 3. The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, by-laws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure.

The agreement provides for four groups of workers, each with different qualifications. Article VI § 5a provides, "The Union shall maintain an 'Out of Work List' which shall list the applicants within each group in chronological order of the dates they register their availability for employment."[1]

Local 575 Referral Procedure Rules 3 and 4 provide:

> 3. All applicants who appear, in person, at the hiring hall requesting registration will be required to fill out an approved registration form. *Each such applicant meeting this requirement shall be registered on the date he is found to be qualified after having verified the information given on his application.*
>
> 4. All applicants for employment must submit verification of his qualifications as set forth in the collective bargaining agreement for each group maintained on the register of applicants as defined in Article IV of the collective bargaining agreement. It is the responsibility of the applicant to obtain appropriate verification and *no applicant will be placed on the registration list in any group until such verification is received.*

(Emphasis added). Further, Rule 10 provides:

> 10. Applications for employment and supporting documentation shall remain on file for so long as an applicant remains on the out of work list. Applications and documentation will remain on file with the local union for a period of six (6) months after the applicant is no longer registered on the out of work list.

At the hearing before the ALJ, Stevens testified that he had used the hiring hall in May 1982, and, at that time, submitted a letter from his local detailing his qualifications. On June 1, 1982, Stevens was referred for employment to Coleman Electric. On January 21, 1983, Stevens' employment with Coleman was terminated, and, on January 27, Stevens returned to the hiring hall. On that day, Stevens was told by Local 575 President Greg Call that a letter of qualification from Stevens' local would be required because Local 575 did not retain records past six months in accordance with Referral Procedure Rule 10.

In order to maintain a position on the referral lists, a referent was required to sign the out-of-work list every thirty days. On February 2, after signing the list, Stevens asked to see the books, was told he was # 438, and was told that that was all that he could be told. On March 29, Stevens' request to see the list was likewise

---

**1.** Breach of the collective bargaining agreement is not in issue in this case.

denied. On April 25, Stevens asked to see the list and was told that he was #273. President Call held up the list, pointing out Stevens' position from a distance of five feet. Similar requests by Stevens to see the books were denied in May, June, and July 1983. Stevens admitted that he was always told his referral number and never asked to see any other union official other than President Call. Stevens explained this reluctance by stating "I mean, that man hinges my job—future hinges on him." Stevens testified that he never specifically told Call why he wanted to see the books, but that "I wanted to see them. I wanted to see if there was anybody going out ahead of me or behind me or if I could talk to them, you know."

Carolyn Harris, Secretary of Local 575 until May 1982, testified that the referral book was kept secured so members could not look through it. Harris testified that Local 575 Business Manager Don Keyser told Harris that the reason that a letter was required from travelers "was to slow down some of the men going to work. It was to harass people, men, travelers." Harris's testimony referred to events which took place more than one year before the charge was filed and was admitted by the ALJ as background and not as the basis for a specific violation of the Act.

Don Keyser testified that the six-month requirement was adopted to make the office more efficient and because the IBEW Guide for Financial Secretaries indicated that records should be kept for six months.[2] Keyser also testified that such qualification letters were required by the Board. Before receipt of the letter, a laborer would be placed in the lowest group, group IV, and later raised to his appropriate level on receipt of the letter. Keyser indicated that the letter is usually received the same day the worker signed the out-of-work list and that "he's placed in a position that he would have been, had you had the letter on the day he actually signed the

book." Keyser denied making the statements attributed to him by Harris.

Phillip T. Burton, a member of IBEW Local 183, testified that he had seen the out-of-work list and that it was available for inspection although he had never asked. Frank Allen, also of Local 183, testified that he had seen the book although he never asked. Likewise, Lester Kayser of Local 183 testified that he was shown the out-of-work list. See also testimony of Loren Grooms.

Gregory Tingler, a member of the Local 575 Executive Board, testified that he was present at either the April or May discussion between Call and Stevens, heard Stevens ask for the list and saw Call take the list to the window. Greg Call testified that in January 27, 1983 no letter was on file for Stevens, but he was nevertheless placed in Group II on that date.

On October 26, 1983, the ALJ found Local 575 guilty of unfair labor practices pursuant to 29 U.S.C. § 158(b)(1)(A). The ALJ found that both counts alleged by Stevens were breaches of the union's duty of fair representation, and, therefore, constituted unfair labor practices. The ALJ credited the testimony of Stevens based on demeanor and corroboration, and credited the testimony of Harris. The ALJ discredited the testimony of Keyser and Call on the grounds that it was vague, incomplete and evasive. The ALJ found that the resubmission requirement was arbitrary, unreasonable, and discriminatory, and furthered no reasonable objective of the Local. The ALJ further found that the union's refusal to grant access to referral documents was a breach of the union's duty and that Stevens' request was reasonable and in good faith. The ALJ ordered posting of the following order:

> WE WILL NOT, in the operation of our hiring hall facility, require travelers (members of sister locals) to resubmit

---

**2.** The IBEW Guide for Financial Secretaries provided:

> Unions that maintain referral halls, must preserve membership and referral records, including applications for referral, for 6 months from the date of the making of the record.

letters from their home locals as to their qualifications, demonstrating that they have passed a journeyman wireman's examination and have four years experience in the industry, if they have been off our out-of-work list more than six months, in order to permit such travelers to sign our out-of-work list.

WE WILL NOT refuse reasonable requests by such travelers to inspect and review our out-of-work list and register.

On April 27, 1984, the Board adopted the order of the ALJ, 270 NLRB No. 20, finding insufficient evidence to reverse the ALJ's credibility determinations, *id.* at 2 n. 1, and finding it unnecessary to rely on the testimony of Carolyn Harris, *id.* at n. 2. On June 29, 1984, the Board applied for enforcement of its order pursuant to 29 U.S.C. § 160(e). In opposing enforcement, Local 575 argues that the ALJ erred in considering the testimony of Carolyn Harris and that the ALJ's decision was not supported by the evidence.

## II.

29 U.S.C. § 160(e) provides in pertinent part that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). "We will not normally disturb the credibility assessments of the Board or the Administrative Law Judge, who has observed the demeanor of the witnesses." *NLRB v. Cement Transport, Inc.*, 490 F.2d 1024, 1029 n. 5 (6th Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974). However, "[a] reviewing court does not act, even in credibility matters, as a mere rubber stamp for the administrative agency

action on appeal." *Krispy Kreme Doughnut Corp. v. NLRB*, 732 F.2d 1288, 1290 (6th Cir.1984). *See also Local Union No. 948, IBEW v. NLRB*, 697 F.2d 113, 117–18 (6th Cir.1982).

29 U.S.C. § 158(b)(1)(A) provides:

It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein....

Section 157 provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

In *Local Union No. 948 v. NLRB*, 697 F.2d 113, 116 (6th Cir.1982) (§§ 8(b)(1)(A), (2)), we held that "[i]n order to find a violation of the Act in the operation of an exclusive hiring hall, the Board need not have specific evidence of intent to encourage or discourage union membership; the Board may find a violation where the union refuses to place non-members on the referral list or gives members preference on the referral list or gives members preferences over non-members in referrals." (footnote omitted). "The Local's preference of members over non-members in referrals from the hiring hall permits the Board to infer a discriminatory intent." *Id.* at n. 7. " 'The Board may make this inferential finding of motive and intent by applying the long-enduring legal maximum that a party is presumed to intend the natural, foreseeable

consequences of its acts.'" *Id.* at 117 n. 7 (quoting *NLRB v. Local 542, 542–A & 542–B, Int'l Union of Operating Eng'rs,* 485 F.2d 387, 392 (3d Cir.1973)); *Journeymen Pipe Fitters Local 392 v. NLRB,* 712 F.2d 225, 231 (6th Cir.1983) ("there must be separate and distinct proof of the unlawful motive") (§§ 8(b)(1)(A), (2)). *See generally NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 2472–75, 76 L.Ed.2d 667 (1983) (§§ 8(a)(1), (3)); *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 103 S.Ct. 1467, 1473–75, 75 L.Ed.2d 387 (1983) (§ 8(a)(3)); *American Ship Building Co. v. NLRB,* 380 U.S. 300, 308–13, 85 S.Ct. 955, 962–65, 13 L.Ed.2d 855 (1965) (§§ 8(a)(1), (3)); *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 227–29, 83 S.Ct. 1139, 1144–46, 10 L.Ed.2d 308 (1963) (§ 8(a)(1)); *Radio Officers' Union v. NLRB,* 347 U.S. 17, 42–48, 74 S.Ct. 323, 336–40, 98 L.Ed. 455 (1954) (§ 8(a)(3)); *Local Union No. 277 v. NLRB,* 717 F.2d 805, 808–10 (3d Cir.1983) (§ 8(b)(1)(A)); *NLRB v. Moving Picture and Projection Machine Operators Union Local No. 143,* 649 F.2d 610, 612 (8th Cir.1981) (§§ 8(b)(1)(A), (2)); *T.I.M.E.—DC, Inc. v. NLRB,* 504 F.2d 294, 299 (5th Cir.1974) (§§ 8(b)(1)(A), (2)).

■ The natural and foreseeable consequence of the six-month rule is that travelers will more frequently be required to obtain documentation to be eligible for referral, and, therefore, their referral will be hindered to the benefit of Local 575 members who face no such documentation problems. Further, the evidence produced by Local 575 with respect to the purpose of the rule is so sparse that it does not credibly support the proffered administrative convenience purpose behind the six-month rule. In light of the rule's foreseeable

consequences, we agree with the Board that Harris', testimony was not necessary to establish a violation of the Act. The six-month rule discriminates against IBEW members who are not affiliated with Local 575 in violation of § 8(b)(1)(A). *NLRB v. United Ass'n of J & A of Plumbing,* 424 F.2d 390, 393 (6th Cir.1970) ("Whatever the merits of a system of hiring limited to membership in a particular construction trades local might be, such a system is clearly not in keeping with the provisions of present federal law."); *NLRB v. Local Union No. 80, Sheet Metal Workers' International Ass'n,* 491 F.2d 1017, 1028 (6th Cir.1974).

■ Further, the natural and foreseeable effect of the union's failure to grant Stevens access to its books is to prohibit Stevens from determining whether the referral hall rules had been complied with. To the extent that this prohibits Stevens from monitoring the performance of his chosen representative it undermines his right to so choose, and, accordingly, violates § 8(b)(1)(A).[3]

Accordingly, the Board's petition for enforcement is GRANTED.

---

**3.** The ALJ and the Board relied on the doctrine of *Miranda Fuel Company,* 140 NLRB 181 (1962), which holds that a breach of a union's duty of fair representation constitutes an unfair labor practice. We, like the Supreme Court, have previously declined to decide this question. *Journeymen Pipe Fitters Local 392 v. NLRB,* 712 F.2d 225, 229 (6th Cir.1983); *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). *But see United States v. Mitchell,* 101 S.Ct. 1559, 1566, 451 U.S. 56, 67 n. 3, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring); *NLRB v. Local 282, International Brotherhood of Teamsters,* 740 F.2d 141, 145–46 (2d Cir.1984); *International Longshoremen's Ass'n v. NLRB,* 705 F.2d 1549, 1551 (11th Cir.1983). Because we find a § 8(b)(1)(A) violation in this case without resort to the *Miranda Fuel* doctrine, we again reserve the appropriateness of that analysis for another day.