**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 139, INTERNATIONAL UNION of OPERATING ENGINEERS, Respondent,**

No. 85–1895.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1986.

Decided July 22, 1986.

Rehearing Denied Sept. 8, 1986.

Rehearing and Rehearing En Banc Denied Sept. 22, 1986.

Robert Bell, N.L.R.B., Washington, D.C., for petitioner.

Matthew R. Robbins, Goldberg Previant & Uelmen, Milwaukee, Wis., for respondent.

Before BAUER and POSNER, Circuit Judges, and MOODY, District Judge.*

MOODY, District Judge.

In this petition for enforcement of an Order of the National Labor Relations Board ("NLRB") we must decide whether a union violates § 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1) ("NLRA") by initiating internal union charges against a union member and reporting him to unemployment compensation authorities in retaliation for activity

---

* The Honorable James T. Moody, District Judge for the Northern District of Indiana, is sitting by designation.

protected by § 7 of the NLRA and whether a union breaches its duty of fair representation by refusing a union member's request for referral list information from the union hiring hall.

This court has jurisdiction pursuant to 29 U.S.C. § 160(e). We set out the facts in some detail as they provide insight into the motive for Local 139's conduct toward union member William Evans and, with regard to the referral list information, demonstrate an intent that is inconsistent with the union's duty to fairly represent all employees within the bargaining unit.

William Evans, a member of Local 139 of the International Union of Operating Engineers, has been an open and vocal critic of the current administration of Local 139. Donald W. Shaw, the president and business manager of the union, has responsibility for administration of the union hiring hall. Evans previously held the position of union business agent but resigned because of a disagreement with Shaw over union referral practices shortly after Shaw took office in 1977.

Since his resignation, Evans has protested, reported, and filed internal union charges alleging Shaw engaged in unfair election practices and hiring hall referral abuses. Evans publishes a newspaper, the *Ethical Engineer*, to expose what he believes to be corruption in the Shaw administration and to encourage fellow Local 139 members to oppose Shaw's policies and practices.

### I. *Internal Union Charges and Report to WDILHR*

Shortly after Evans' resignation in 1977, the Shaw administration embarked on an effort to quiet Evans by thwarting his efforts to express publicly his disapproval of the Shaw administration. In August of 1982, Shaw initiated internal union charges against Evans alleging that Evans had violated union bylaws and the international union constitution by slandering union officers, creating dissension among the members, and disclosing the business transactions of Local 139 to persons outside the

local. Shaw admits that he filed the charges because of information Evans had published in the *Ethical Engineer*. The union membership found Evans guilty as charged. Although the International Union had told Shaw that Local 139 could not fine Evans for the conduct with which Evans was charged, Shaw convinced the union members that Evans' dissension had required Local 139 to spend thousands of dollars defending itself against Evans' charges and that an appropriate penalty would be to require Evans to pay a token "reimbursement" of $5,000, with $3,000 to be returned to Evans on the condition that he attend the next twelve meetings. Evans was then required to travel to Washington, D.C. at his own expense, to appeal the conviction. The International Union reversed both the conviction and the penalty.

In another effort to harass Evans, Local 139 referred a job to him knowing that it would conflict with the date of the NLRB hearing in this matter and then reported him to the Wisconsin Department of Industry, Labor and Human Relations (WDILHR) for refusing to accept the job referral. Consequently, the WDILHR terminated Evans' unemployment compensation benefits. Prior to this incident, Evans had not received a job referral from the union in three years. Shaw testified that prior to reporting Evans to the WDILHR the union had consistently adhered to a policy of refusing to release referral information to any union member or governmental agency without a court order. The NLRB found that by charging, trying, and fining Evans on internal union charges and by reporting him to the WDILHR, Local 139 violated § 8(b)(1)(A) of the NLRA by restraining him in the exercise of protected activity within § 7 of the NLRA. *Operating Engineers, Local 139*, 273 N.L.R.B. No. 126 (1984).

On petition for enforcement of an NLRB order, this court upholds findings of fact if they are supported by substantial evidence in the record as a whole. *NLRB v. Denver Building and Construction Trades Council*, 341 U.S. 675, 691–92, 71 S.Ct. 943,

952–53, 95 L.Ed. 1284 (1951); *NLRB v. Chauffeurs, Teamsters, Warehousemen & Helpers,* 773 F.2d 921, 923 (7th Cir.1985). Moreover, we substantially defer to the NLRB's interpretation and application of the NLRA because of its "special competence" in the field of labor relations. *Pattern Makers' League of North America, AFL–CIO v. NLRB,* —— U.S. ——, 105 S.Ct. 3064, 3068, 87 L.Ed.2d 68 (1985).

The NLRB found that Evans' publication of the *Ethical Engineer* qualified as concerted activity within the protection of § 7 and that the union's motive in bringing internal union charges against Evans and in reporting him to the WDILHR was to retaliate against Evans for publishing the *Ethical Engineer.* Local 139 argues that Evans' complaints about union leadership were not "concerted activities."

■ Section 7 of the NLRA, 29 U.S.C. § 157, guarantees employees the right to self-organization, "to form, join, or assist labor organizations, to bargain, collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection", and the right to refrain from such activities. Section 8(b)(1)(A) makes it an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed by § 7. 29 U.S.C. § 158; *Local 1384, United Automobile, Aerospace and Agricultural Implement Workers of America, v. N.L.R.B.,* 756 F.2d 482, 487 (7th Cir.1985).

The NLRB found two alternative grounds for deciding that Evans' publication of the *Ethical Engineer* was protected by § 7 activity. First, it adopted the Administrative Law Judge's finding that the activity was concerted activity because Russell Retzack, a fellow union member of Evans, assisted Evans in publishing the *Ethical Engineer* and in exposing what they believed to be corrupt practices of the union administration. Second, the NLRB adopted the Administrative Law Judge's conclusion that even if Retzack had not assisted Evans, § 7 rights include the right

to participate fully and freely in internal union affairs by questioning the wisdom of union representatives or taking action to align the union membership with one's own position.

■ To fall within the scope of concerted activity, an employee's action must be taken "for the purpose of inducing or preparing for group action to correct a grievance or complaint." *United States Steel Corp. v. NLRB,* 711 F.2d 772, 775 (7th Cir.1983); *NLRB v. Town & Country L.P. Gas Service Co.,* 687 F.2d 187, 191 (7th Cir.1982). In *United States Steel Corp. v. N.L.R.B.,* we found that an employee had engaged in concerted activity protected by § 7 in honoring another union's picket line and distributing, to his fellow employees, leaflets in support of the picket line. Although he had written, typed, printed, and distributed his leaflets alone, his distribution of the leaflets was "concerted" activity because it was an attempt to induce group action on the part of his fellow employees. 711 F.2d at 775.

In *N.L.R.B. v. Town & Country L.P. Gas Service Co.,* an employee's individual act of filing a grievance concerning his own discharge was "concerted" because resolution of the grievance sufficiently related to collective union objectives as the grievance was essentially a challenge to the company's disparate treatment of employees. 687 F.2d at 191.

■ In the present case, we agree with the NLRB that Evans' conduct in publishing the *Ethical Engineer* falls within the definition of concerted activity. The NLRB found that Evans acted with another union member to publish the *Ethical Engineer* and that their purpose was to incite action against Shaw and his union practices. This is a clear example of concerted activity by employees for mutual aid and protection. We also would sustain the NLRB's alternative finding that an individual employee engages in concerted activity by taking action to align the union membership with his own position against the union representatives.

Next we must consider whether disciplining Evans and reporting him to the WDILHR in retaliation for § 7 concerted activity is an unfair labor practice proscribed by § 8(b)(1)(A). Section 8(b)(1) makes it an unfair labor practice to "restrain or coerce (A) employees in the exercise of the rights guaranteed in [§ 7]: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition and retention of membership therein ..." 29 U.S.C. § 158(b)(1).

As explained above, when employee members of a union undertake to inform fellow members of what they believe to be corruption of union officials, they are engaging in "concerted activity." Therefore, imposing fines on these employees for their dissident activities "restrains" the exercise of their § 7 rights. However, the terms "restrain or coerce" in § 8(b)(1)(A) are not interpreted so literally as to make it an unfair labor practice for a union to enforce compliance with union rules and policies. *Pattern Makers' League v. N.L.R.B.*, —— U.S. ——, 105 S.Ct. 3064, 3068, 87 L.Ed.2d 68, 74 (1985). Section 8(b)(1)(A) was not intended to give the NLRB power to regulate internal union affairs, including union disciplinary charges and fines against members. *N.L.R.B. v. The Boeing Company*, 412 U.S. 67, 71, 93 S.Ct. 1952, 1955, 36 L.Ed.2d 752 (1973); *Scofield v. N.L.R.B.*, 394 U.S. 423, 428, 89 S.Ct. 1154, 1157, 22 L.Ed.2d 385 (1969); *N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 195, 87 S.Ct. 2001, 2014, 18 L.Ed.2d 1123 (1967). Although any disciplinary charge or fine is "coercive" to some degree, the provisions of § 8(b)(1)(A) were not intended by Congress to apply to the imposition by the union of fines not affecting the employer-employee relationship. The Board has authority to pass on union rules affecting an individual's employment status but not rules affecting only his union membership status. *N.L.R.B. v. The Boeing Company*, 412 U.S. 67, 74, 93 S.Ct. 1952, 1956–57, 36 L.Ed.2d 752 (1973) (citing *Scofield*, 394 U.S. 428–30, 89 S.Ct. at 1157–58). Congress has not empowered the NLRB to pass judg-

ment on the penalties a union may impose so long as the penalty does not impair the member's status as an employee.

In *Allis-Chalmers*, the court held that imposing fines against current union members does not "restrain or coerce" the workers in the exercise of their § 7 rights. 388 U.S. at 187, 87 S.Ct. at 2010. The court reasoned that since membership in the union is purely voluntary, it is not unlawful for a union to punish a member by fine, suspension or expulsion for an infraction of the union rules. The relationship between a member and his union is contractual and a member is free to resign to escape union discipline. *Pattern Makers*, —— U.S. at ——, 105 S.Ct. at 3068, 87 L.Ed.2d at 75.

The Supreme Court, this court, and the NLRB itself have in other cases concluded that § 8(b)(1)(A) has nothing to say about the reasonableness of union fines. *Boeing*, 412 U.S. at 74, 93 S.Ct. at 1956–57; *Norplex v. N.L.R.B.*, 445 F.2d 155, 158 (7th Cir.1971); *Booster Lodge No. 405*, 185 N.L.R.B. 380, 383 n. 16, 75 LRRM 1004, 1007 n. 16 (1970). Likewise, the Supreme Court has concluded that questions such as the union's motivation for imposing a fine "delv(e) into internal affairs in a manner ... Congress did not intend." *Boeing*, 412 U.S. at 74, 93 S.Ct. at 1956 (citing *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 296, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971)). The NLRA does not undertake to protect union members in their rights as members from arbitrary conduct by unions and union officials. *International Association of Machinists v. Gonzales*, 356 U.S. 617, 620, 78 S.Ct. 923, 925, 2 L.Ed.2d 1018 (1958).

We recognize that by conferring on the NLRB the authority to implement and interpret the NLRA, Congress has narrowed our review of NLRB decisions. *N.L.R.B. v. Insurance Agents International*, 361 U.S. 477, 499, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960). We must sustain the NLRB's position so long as its explication of a rule is not "inadequate, irrational, or arbitrary,"

*N.L.R.B. v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963), but we must not make our review so deferential as to become a mere "rubber stamp" of the NLRB's decisions. *N.L.R.B. v. Harvstone Mfg. Co.*, 785 F.2d 570, 574 (7th Cir.1986).

The Administrative Law Judge found that the union's conduct of filing union charges against Evans and reporting him to the Wisconsin unemployment compensation authorities was "restraint and coercion ... not privileged by the Section 8(b)(1)(A) proviso and therefore ... a violation of that Section of the NLRA." Joint Appellate Appendix, p. 18. The NLRB affirmed the conclusion of the Administrative Law Judge without commenting on the issue of whether the union's imposition of fines and report to the WDILHR were purely internal union affairs outside the reach of § 8(b)(1)(A). The NLRB has interpreted § 8(b)(1)(A) to prohibit the union discipline and the report to the WDILHR in this case but has offered no explanation for its deviation from established precedent holding that internal union fines or discipline that restrain § 7 rights are not violations of § 8(b)(1)(A). The NLRB made no finding as to whether the union discipline and report to the WDILHR were matters affecting employment.

■ The record shows that the disciplinary charges, union trial and fine against Evans and the report to the WDILHR were unrelated to his status as an employee. There is no evidence that Local 139 sought to enforce the disciplinary fine by interfering with Evans' relationship with employers who used union labor. Even though Local 139's discipline of Evans was motivated by its desire to quiet Evans in his expression of dissident views, it did not extend its efforts beyond the use of internal union mechanisms to achieve this end. Because the union's action in charging and fining Evans did not touch the employer-employee relationship, the union did not commit an unfair labor practice in violation of § 8(b)(1)(A) by charging and fining Ev-

ans. *See Boeing*, 412 U.S. at 74, 93 S.Ct. at 1956–57.

■ Likewise, the union's report to the WDILHR was an internal union affair beyond the scope of § 8(b)(1)(A). Local 139 referred a job to Evans knowing that he could not accept the job because he was scheduled to appear before the NLRB on the same day. When Evans informed Local 139 that he could not take the job, Local 139 sent a letter to the WDILHR to report that Evans had refused a job referral. The NLRB found that "(b)y charging, trying, and fining Evans and reporting him to the State of Wisconsin's Department of Industry, Labor, and Human Relations on 7 June 1983 because Evans published the *Ethical Engineer*, the Respondent (Local 139) violated § 8(b)(1)(A) of the Act." The Administrative Law Judge recommended ordering Local 139 to inform the WDILHR that its June 7, 1983 letter was an error because Evans did not refuse a job offer. Rejecting this recommendation, the NLRB instead ordered Local 139 to send to the WDILHR a copy of the NLRB's decision and thus allow the WDILHR to decide whether Evans did or did not refuse a job referral.

The NLRB's conclusion that Local 139 violated § 8(b)(1)(A) by reporting Evans to the WDILHR does not rest on a finding that the letter to the WDILHR interfered with Evans' right to attend the NLRB hearing on his unfair labor practice allegations against Local 139. We know that sending the letter was contrary to the regular policy of Local 139 and that the letter was sent in retaliation for Evans' publication of the *Ethical Engineer*. We do not know whether Evans did or did not refuse a job according to the Wisconsin unemployment compensation rules and thus we do not know whether Local 139's letter, reporting that Evans had refused a job, was false or misleading. If the WDILHR does not consider attendance at an NLRB hearing to excuse an unemployed worker's refusal to accept a job, then Local 139 was accurate in its report that Evans had refused a job referral.

■ Accurate or inaccurate, the letter to the WDILHR neither had nor was intended to have any impact on an employer or Evans' relationship with an employer. The letter to the WDILHR did not interfere with Evans' "existing or prospective employment relations." If Local 139 implicitly or explicitly agreed with its members not to make such information available to outside agencies, then perhaps the union would be liable in a state court action for breach of its membership arrangement with union employees. *See Motor Coach Employers v. Lockridge*, 403 U.S. 274, 295–96, 91 S.Ct. 1909, 1922–23, 29 L.Ed.2d 473 (1971). Whether a union is free to report a member's conduct to an outside governmental agency is a matter between the union and its members so long as it does not impact on the member's relations with his employer. *U.O.P. Norplex, Division of Universal Oil Products Company v. NLRB*, 445 F.2d 155, 157 (7th Cir.1971) cited in *Boeing*, 412 U.S. at 74, 93 S.Ct. at 1956–57. We hold that the NLRB erred in concluding that the union breached § 8(b)(1)(A) by charging, trying, and fining Evans and reporting him to the WDILHR. This conduct had no impact on Evans' status as an employee or his relations with any employer and thus, were never intended to be prohibited by § 8(b)(1)(A).

## II. *Job Referral List*

The union operated a job referral system whereby union employers contacted the hiring hall to obtain employees when they had work available. Local 139 maintains a referral list by which it assigns jobs to workers. Unless the employer requests a particular worker the collective bargaining agreement requires the union to refer jobs according to the relative positions of the names on the list.

Suspecting that his referral rights had been violated, Evans requested the names, addresses and telephone numbers of the 50 individuals before him and 50 individuals after him on the referral list of each of Local 139's four district offices. Local 139 refused, claiming that to release the infor-mation would violate the other members' rights to privacy and anonymity. It also asserted that it had a longstanding policy against the release of such information. The NLRB did not find evidence to support any allegations of discriminatory referral practices by the union. Nonetheless, the NLRB found that Local 139's duty of fair representation requires it to deal fairly with a reasonable request for referral information and that it breached its duty of fair representation by refusing to comply with Evans' request. The NLRB found Evans' reasonable request for referral information involved a matter affecting employment and that the refusal to supply the list deprived Evans of the only available means to determine whether the union was violating his referral rights.

Local 139 contends that its policy against releasing referral information is not "intentional misconduct" as required to show a breach of the duty of fair representation in this Circuit. *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522 (7th Cir.1981). It also argues that its policy against releasing the information is an internal union matter best left to the discretion of the union and its members.

■ The NLRA imposes on the bargaining representative an implied duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967). The union's right under § 9 to act as the exclusive representative of the employee unit that selected it implies a correlative duty on the union to "serve the interests of all members without hostility or discrimination, to exercise its discretion with good faith and honesty and to eschew arbitrary conduct." *United Independent Flight Officers v. United Airlines*, 756 F.2d 1274, 1281 (7th Cir.1985); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967).

■ The duty of fair representation extends to both the negotiation and administration of the collective bargaining agreement, although the standards applied in the two contexts may differ. *United Independent Flight Officers*, 756 F.2d at 1201;

*Schultz v. Owens-Illinois*, 696 F.2d 505, 514 (7th Cir.1982). Thus, in negotiating a contract with the employer, the union is allowed a "wide range of reasonableness ... subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048; *Schultz v. Owens-Illinois, Inc.*, 696 F.2d at 515. In administering a collective bargaining agreement, the duty of fair representation requires good faith by the union but the range of reasonable conduct is narrowed. *Schultz v. Owens-Illinois*, 696 F.2d at 515.

In *Vaca v. Sipes*, the Supreme Court indicated that arbitrary, discriminatory, or bad faith conduct by the union was a breach of the union's duty of fair representation. 386 U.S. at 190, 87 S.Ct. at 916–17. Thus, it expressly indicated that a union could breach its duty of fair representation by engaging in merely arbitrary conduct. Although it is arguable that some types of arbitrary conduct might not be "intentional misconduct," this court interprets *Vaca v. Sipes* as requiring intentional union misconduct to show a breach of the duty of fair representation. *Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242, 244 (7th Cir.1986) (Union's perfunctory representation of employee at grievance hearing did not breach the duty of fair representation if the union's conduct was not motivated by wrongful intent. Careless or bone-headed conduct is not a breach of the duty of fair representation.); *United Independent Flight Officers v. United Air Lines*, 756 F.2d at 1282–83 (Absent substantial evidence of fraud, deceitful action or dishonest conduct, employee could not show union's breach of duty of fair representation in negotiating terms of employee benefit plan.); *Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294–95 (7th Cir.1983) (Even gross negligence in prosecuting an employee grievance is not a breach of the duty of fair representation where there is no indication that the union acted in bad faith.); *Graf v. Elgin, Joliet & Eastern Railway Co.*, 697 F.2d 771, 779 (7th Cir. 1983) (Leaving open the question of wheth-er extreme and reckless indifference may rise to the level of intentional misconduct, we found that a union's griever's negligent failure to preserve properly an employee's union appeal rights did not breach the duty of fair representation.); *Hoffman v. Lonza*, 658 F.2d 519, 521 (7th Cir.1981) (Union's negligence in failing to appeal a grievance was not a breach of the duty of fair representation.).

In the present case, the alleged breach of the duty of fair representation involves the administration of the collective bargaining agreement. Since 1976 the NLRB has held that inherent in a union's duty of fair representation is an obligation to deal fairly with an employee's request for information as to his relative position on the out-of-work register for purposes of job referral through an exclusive hiring hall. *Teamsters Local No. 519*, 276 NLRB No. 94 (1985); *Bartenders, Local 165*, 261 NLRB No. 67 (1982); *Carpenters, Local 1080*, 255 NLRB No. 14 (1981), enf'd mem. 676 F.2d 699 (7th Cir.1982); *Operating Engineers, Local 324*, 228 NLRB 587 (1976). The NLRB rejects the argument that anonymity or privacy of union members justifies a union's refusal to provide referral list information.

Evans was completely dependent on the union for the protection of his job referral rights. As the NLRB found, Evans' request was not unduly burdensome. In light of Local 139's other retaliatory conduct and harassment of Evans, one could reasonably infer that its refusal to release the information to Evans was also motivated by bad faith. The NLRB found the union had no justifiable reason for refusing to provide a union member with the only available means to protect his job referral rights and that such refusal was intentional misconduct in breach of its duty to fairly represent employees in administering the collective bargaining agreement. The NLRB was correct in concluding that the union committed an unfair labor practice by engaging in such conduct. *See Hall v.*

**994**

*Printing & Graphic Arts Union, Local No. 3*, 696 F.2d 494 (7th Cir.1982).

### III. *Remedy*

As a remedy for Local 139's violations of the NLRA, the NLRB ordered the respondent to cease and desist from its illegal conduct. The NLRB also ordered the union to take affirmative corrective action. Among other things, the NLRB ordered the union to post a one-page notice stating the violations and the remedies. The NLRB also ordered the union to include a copy of the notice in the mailing of its newsletter and to reimburse Evans for the expenses he incurred in appealing the internal union charges. Because we refuse to accept the NLRB's conclusion that Local 139 violated § 8(b)(1)(A) by charging, trying and fining Evans and reporting him to the WDILHR, we accordingly refuse to enforce the NLRB's order to the extent that it purports to remedy that putative violation.

With regard to Local 139's improper refusal to provide Evans with the job referral list, Local 139 contends that the newsletter notice is an unwarranted extraordinary remedy that serves only to punish the union and therefore run afoul of the remedial purpose of the NLRA. The NLRB has broad authority to fashion appropriate remedial orders. *NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 262–63, 90 S.Ct. 417, 419–20, 24 L.Ed.2d 405 (1969). Unless the NLRB's order is a "patent attempt to achieve ends other than these which can fairly be said to effectuate the policies of the Act" we will not disturb the NLRB's award. *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218–19, 87 L.Ed. 1568 (1943). The NLRA's purpose is remedial. *Local 60, United Brotherhood of Carpenters v. NLRB*, 365 U.S. 651, 655, 81 S.Ct. 875, 877–78, 6 L.Ed.2d 1 (1961). The NLRB has broad discretion to order remedial acts to dispel the consequences of the union's violations of the Act. *Farmers Energy Corp. v. NLRB*, 730 F.2d 1098, 1102 (7th Cir. 1984).

In the present case, the NLRB has not abused that discretion in ordering the union to publish the NLRB's notice to individual employees through the union newsletter. The notice merely contains statements by the union as to the conduct it will and will not perform in the future. Requiring the union to include the notice in its next mailing is not so unduly burdensome so as to be considered punitive. The NLRB has not required payment of a fine or other punitive measures and has not abused its discretion in fashioning an appropriate remedy for the union's violations of the NLRA.

### CONCLUSION

Because we find that the conduct of Local 139 in charging, trying and fining Evans and reporting him to the WDILHR was an internal union affair beyond the scope of § 8(b)(1)(A), we refuse to enforce the portion of the NLRB's order that relates to that alleged violation. Because we find that the NLRB's determination that Local 139 breached its duty of fair representation by refusing to comply with Evans' request for information as to his relative position on the referral list, we enforce the portion of the NLRB's order relating to that violation. The NLRB's Petition for Enforcement is GRANTED IN PART and DENIED IN PART.