**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CARPENTERS LOCAL 608, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Respondent.**

**No. 621, Docket 86–4107.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1987.

Decided Feb. 10, 1987.

Ira Sturm, New York City (Manning, Raab, Dealy & Sturm, of counsel), for respondent.

Frederick Havard, Atty., N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein, Supervisory Atty., N.L.R.B., Washington, D.C., of counsel), for petitioner.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and PIERCE, Circuit Judges.

FEINBERG, Chief Judge:

The National Labor Relations Board (the Board) petitions for enforcement of an order requiring Carpenters Local 608, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (the union), to permit union members to inspect and duplicate hiring hall records that contain the names, addresses and telephone numbers of persons who had used the hiring hall. The union objects to enforcement, arguing that its refusal to supply those records did not constitute a breach of its duty of fair representation under section 8(b)(1)(A) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b)(1)(A), and contending that the Board's order conflicts with section 401(c) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481(c), which permits a union to keep its membership lists confidential. For the reasons that follow, we enforce the Board's order.

I.

The order under review concerns the efforts of three union members, John Harte, Franklin McMurray and Eugene Clarke (the dissidents), to obtain information concerning the union's hiring hall and referral practices. The union operated its hiring hall through a telephone referral system; members seeking work as well as employers needing workers would call the union, and the union would refer workers to particular jobs. The union maintained daily and monthly "shape-up" and "referral" lists. The former contained names and telephone numbers of persons requesting referrals; the latter contained the names of workers and the employers to whom they were referred. According to the union, workers were referred to jobs in the order in which they called in, taking into account any special qualifications requested by the employer and any worker's preference for certain types of work.

Harte, McMurray and Clarke were founders of a dissident group within the union called "Carpenters for a Stronger Union," and each had been involved in unsuccessful election campaigns against incumbent union officers. At union meetings and in publications distributed to union members, the dissidents objected to various union policies and criticized the performance of several union officers. Some of their concerns related to the operation of the hiring hall. The dissidents maintained that the referral system was unfair and arbitrary, did not allow members to check whether referrals were being administered fairly, and gave Paschal McGuiness, the union's business manager, and his staff, too much control.

Beginning in the summer of 1982 and continuing into the first half of 1983, the dissidents made several requests of union officials to inspect hiring hall records. The dissidents were concerned that their activities within the union were adversely affecting their referral opportunities. The dissidents, however, were never permitted to inspect those records. Instead, they were shown their individual work cards, which

reflected when each had called the union for work and when each had been referred to a job.

In February and March 1983, the dissidents filed unfair labor practice charges against the union, claiming that the union violated its duty of fair representation when it refused their requests to inspect the hiring hall records. In March 1985, the Administrative Law Judge (ALJ) held that the union had violated section 8(b)(1)(A) of the NLRA by arbitrarily refusing the dissidents' requests to inspect the records and by refusing to supply them with information concerning the operation of the hiring hall. In April 1986, the Board affirmed the ALJ's rulings, findings and conclusions, and ordered the union, among other things, to allow its members to "review, inspect, photocopy, or duplicate all hiring hall records." This petition by the Board for enforcement followed.

## II.

■ A union breaches its duty of fair representation in violation of section 8(b)(1)(A) of the NLRA when it arbitrarily denies a member's request for job referral information, when that request is reasonably directed towards ascertaining whether the member has been fairly treated with respect to obtaining job referrals. See *NLRB v. Local 139, International Union of Operating Engineers*, 796 F.2d 985, 992–94 (7th Cir.1986) (hereinafter *Local 139*). See generally *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Unions must "deal fairly" with such requests, *Local 139*, 796 F.2d at 993, and in resolving disputes over disclosing information the Board must balance the member's need for the information against the union's legitimate interest in keeping the information confidential. See *Id.* Cf. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 314–15, 99 S.Ct. 1123, 1130–31, 59 L.Ed.2d 333 (1979) (union requests for information from employer); *NLRB v. Local Union 497, International Brotherhood of Electrical Workers*, 795 F.2d 836 (9th Cir.1986) (hereinafter Local 497) (employer request for hiring hall information).

The union argues that the Board erred in finding that the dissidents had a good faith reason for seeking the hiring hall records, contending that the dissidents' requests should be considered within the context of their efforts to gain elective office within the union. The union claims that the dissidents requested the information in connection with their intra-union political activities and maintains that the union justifiably rejected their demands since the leadership was properly elected. We disagree. Characterizing this dispute solely as part of the dissidents' attempt to wrest control of the union from the incumbents would unnecessarily constrict the rights of members seeking union office and penalize them for exercising activities that are protected under the NLRA. See 29 U.S.C. § 158(b)(1)(A). Even if the dissidents had political purposes for the information, the union could not deny their requests as long as the dissidents were also motivated by a reasonable belief that they were being treated unfairly by union officials in connection with work assignments. See *NLRB v. Leonard B. Hebert, Jr. & Co.*, 696 F.2d 1120, 1126 (5th Cir.), cert. denied, 464 U.S. 817, 104 S.Ct. 76, 78 L.Ed.2d 88 (1983); *Utica Observer-Dispatch, Inc. v. NLRB*, 229 F.2d 575, 577 (2d Cir.1956).

■ The union's arguments challenging the dissidents' motives do not require extended discussion, and only two arguments warrant any discussion at all. The union claims that McGuiness' determination that the dissidents had received their "fair share" of work was a satisfactory response to their requests for information. McGuiness, however, only reviewed the dissidents' individual work records. That investigation could not have addressed the dissidents' concern that they were being treated unfairly as compared to other workers because McGuiness did not analyze the job referral records of any other persons using the hiring hall. In any event, a union is not permitted to refuse a request for information based on its own determination that the grievance underlying the request is non-meritorious or that the information sought is not essential. Cf. *NLRB v. Associated General Contrac-*

*tors,* 633 F.2d 766, 771–72 (9th Cir.1980), cert. denied, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981). If the request is made in good faith, members are entitled to receive the information and determine for themselves whether they have a claim that the union has discriminated against them.

■ The union also notes that McMurray, who ran against McGuiness in a June 1983 election, attempted to obtain the names and addresses of union members by recording this information without the union's knowledge or consent. The ALJ properly found that this event did not affect McMurray's good faith basis for seeking the hiring hall records because it occurred after he had made almost all of his requests. Moreover, as the Board points out, the hiring hall information "would not have done [the dissidents] much good" in their political activities because the referral lists contain information concerning only 700 to 800 of the union's 3200 to 3500 members.

■ The record in this case contains ample evidence that the dissidents' requests for hiring hall records were based on a good faith belief that they were being treated unfairly. For example, almost all of the dissidents' requests were made while they were unemployed and awaiting referral and while union officials were announcing that there was 100% employment among the membership. There was also evidence that the dissidents' work cards contained incorrect information and that the dissidents were offered referrals to jobs outside of their specialties when the union had apparently just referred other workers to jobs in those specialties. We therefore conclude that there is "substantial evidence on the record considered as a whole" to support the Board's finding that the dissidents had a good faith basis for requesting the hiring hall records. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1951).

The union also argues that its denial of the dissidents' requests was not arbitrary and therefore did not constitute a breach of its duty of fair representation. The union notes that it is not required to honor all requests for information, but need only "deal fairly" with such requests, see *Local 139,* 796 F.2d at 993, and claims that its denial of the dissidents' requests to inspect hiring hall records was reasonably based on its desire to protect confidential information. The ALJ found, however, that the union's claims of confidentiality were only an "afterthought," and that they were "entirely specious and pretextual." He noted that the union did not have a formal or written policy of confidentiality with respect to this information. In fact, union officials admitted that they had "no guidelines or precedents" for responding to requests for information.

By contrast, there was substantial evidence that the union did not consider this information to be confidential. McGuiness stated at union meetings that job referral lists were available for anyone to examine, and Article VII, section 1, of the collective bargaining agreement then in effect between the union and the employer associations required the union to "establish and maintain an open employment list." It is also significant that union officials never raised their confidentiality concerns with the dissidents as a reason for denying their requests, and that the union did not offer any evidence that its members sought to keep this information confidential.

On this record, the Board could properly determine that the dissidents' interest in assuring the protection of rights that they reasonably suspected were being violated outweighed any legitimate interest the union had in keeping the hiring hall records confidential. See *Local 139,* 796 F.2d at 992–94. Accordingly, we affirm the Board's holding that the union violated section 8(b)(1)(A) by arbitrarily denying the dissidents' reasonable requests to inspect hiring hall records.

### III.

■ The union also attacks the scope of the Board's remedy. It claims that the dissidents, through their requests for hiring hall records, should not be allowed to obtain information concerning the membership that they are not otherwise entitled to receive. This argument is based on section

401(c) of the LMRDA, 29 U.S.C. § 481(c), which requires labor organizations to,

> comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such organization....

and gives every bona fide candidate for office,

> the right, once within 30 days prior to an election ... to inspect a list containing the names and last known addresses of all members....

Under the LMRDA, a union may keep its membership lists confidential if it complies with the requirements set out in section 401(c) and if it treats all candidates for union office equally in denying requests for the lists. See *Schultz v. Radio Officers' Union*, 344 F.Supp. 58, 67–69 (S.D. N.Y.1972); *Conley v. Aiello*, 276 F.Supp. 614, 616 (S.D.N.Y.1967). The union claims that it has never allowed any such requests and argues that the Board failed to construct a remedy that adequately considered the union's right, under the LMRDA, to keep its membership lists confidential.

The LMRDA, however, only regulates intra-union election campaigns and does not prohibit a union from granting more extensive disclosure than the minimum the statute requires. It would be anomalous to conclude that the LMRDA, a statute designed to protect union members from potential abuse by union officials, see *Marshall v. Local Union 478, Laborers' International Union*, 461 F.Supp. 185, 188 (S.D.Fla.1978), prohibits a union from disclosing names, addresses and telephone numbers of union members where, as here, such information is necessary to determine whether the union has violated a worker's rights. See *Local 139*, 796 F.2d at 992–93; *Local Union 497*, 795 F.2d at 838. See also *Conley v. United Steelworkers of America, Local Union No. 1014*, 549 F.2d 1122, 1125 & n. 4 (7th Cir.1977); *Local 324, International Union of Operating Engineers*, 226 N.L.R.B. 587, 599 n. 34 (1976) (LMRDA does not "delimit[ ] the scope of a union's obligation to furnish information to the employees it represents").

We also reject the union's contention that the portion of the Board's order permitting the dissidents to copy addresses and telephone numbers of members using the hiring hall was overbroad. The dissidents will need this information to verify the accuracy of the hiring hall records. Although it is conceivable, as the union now suggests, that the Board could have provided the same relief and kept the information confidential by having union employees check the information, considering the animus between the union and the dissidents in this case we cannot say that the Board abused its broad discretion, *Lipman Motors, Inc. v. NLRB*, 451 F.2d 823, 829 (2d Cir.1971), in ordering a remedy that would enable the dissidents to verify the records. See *NLRB v. International Brotherhood of Electrical Workers, Local 575*, 773 F.2d 746, 750 (6th Cir.1985).

The Board's order is enforced.