89 F.3d 826
 151 L.R.R.M. (BNA) 2672
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Michaeljohn REGAN, Plaintiff-Appellant
v.
SOFT DRINK AND BREWERY WORKERS UNION, LOCAL 812,
International Brotherhood of Teamsters and the
Coca-Cola Bottling Company of New York,
Inc., Defendants-Appellees
 No. 95-7420.
 United States Court of Appeals, Second Circuit.
 Nov. 14, 1995.
 
 Appeal from the United States District Court for the Southern District of New York (Stanton, Judge).
 APPEARING FOR APPELLANT: LOUIE NIKOLAIDIS, Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, P.C., New York, NY.
 APPEARING FOR APPELLEE: PAUL HEYLMAN, Schmeltzer, Aptaker & Shepard, P.C., Washington, DC, for The Coca-Cola Bottling Company of New York, Inc. BARRY LEVY, Shapiro, Beilly, Rosenberg, Albert & Fox, New York, NY, for Soft Drink and Brewery Workers Union, Local 812, International Brotherhood of Teamsters.
 S.D.N.Y.
 AFFIRMEd.
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 Plaintiff Michaeljohn Regan appeals from a grant of summary judgment for defendants Soft Drink and Brewery Workers Union, Local 812 ("Local 812") and the Coca-Cola Bottling Company of New York, Inc. ("Coca-Cola") by the United States District Court for the Southern District of New York (Stanton, J.). We affirm.
 
 
 1
 Regan brought a hybrid claim for breach of the duty of fair representation by Local 812 and breach of a collective bargaining agreement by Coca-Cola. Section 301 of the Labor-Management Relations Act of 1947 gives a cause of action for breach of the collective bargaining agreement. The duty of fair representation is a union's obligation as the exclusive representative for a bargaining unit "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 87 S.Ct. 903, 910 (1967).
 
 
 2
 Under the collective bargaining agreement between the defendants, an arbitrator's decision is final and binding. A plaintiff, however, may avoid this finality with a hybrid § 301/duty of fair representation claim. To prevail, the plaintiff must prove that (1) the union breached its duty of fair representation, (2) the breach "seriously undermines the integrity of the arbitral process," and (3) the discharge violated the collective bargaining agreement. See Hines v. Anchor Motor Freight, Inc., 96 S.Ct. 1048, 1058 (1976). We agree with the district court that Regan failed to present as an issue whether Local 812's alleged breach of its duty caused the arbitrator to rule incorrectly; therefore, summary judgment was proper.
 
 
 3
 On appeal, Regan claims that the arbitration process was compromised, chiefly because he was not on notice that Coca-Cola was seeking discharge. Regan contends that this lack of notice, compounded by Local 812's indifferent and shoddy representation, prevented him from preparing an effective case for arbitration. Moreover, Regan claims that factual errors in the arbitrator's decision suggest that better representation would have yielded a different result.
 
 
 4
 In his award, the arbitrator concluded that Regan was unable to get along with and obey his supervisors, and that this was a function of Regan's own attitude. Based on this and on "direct observation of Regan," the arbitrator decided Coca-Cola could terminate him. The arbitrator found the following as "Facts":
 
 
 5
 [Regan] cannot work with others and other employees do not like to work with him[.] At the end of Regan's shift, which started on August 9, 1991[sic], he got into a shouting match with his supervisor ... during which he was belligerent and insubordinate, refused to follow orders, threatened his supervisor, had a tirade and then was suspended, pending the instant arbitration. The night before Regan had refused to follow orders ..., leaving trucks unloaded. On March 15, 1991 he got into a shouting match with his supervisor ... and refused to keep quiet despite being told to do so. On February 26, 1991 he was involved in another incident with another supervisor where he, Regan, again challenged the supervisor. Previously, Regan was out for two days, after another confrontation with another supervisor.
 
 
 6
 Regan does not dispute the arbitrator's description of the August 1990 incident (which the parties agree is erroneously dated 1991). Regan claims instead that, had he received sufficient notice, he could have prepared to argue that that particular problem was resolved by his three-day suspension, and that the acting shop steward could have supported this contention. Apparently, Regan means that the steward could have testified that Coca-Cola was willing to drop the matter after the suspension and would not seek arbitration, but plaintiff cites nothing in the record to support this statement. The steward's own affidavit, which is in the record, does not assist the plaintiff.
 
 
 7
 Regan claims he was deceived into believing that the arbitration would address only his grievances against his supervisor for the February and March 1991 incidents. Again, Regan does not dispute that on these occasions he had serious arguments with his supervisor; he disputes only the arbitrator's impression that they involved two different supervisors. Regan nevertheless concedes that he testified at the hearing about the February and March 1991 incidents, and that the supervisor involved did not testify. Even though Regan was able to offer an uncontradicted account of these incidents, the arbitrator still concluded that he could be terminated. Regan does not indicate what more he could have done at the arbitration regarding these incidents to influence the arbitrator's decision.
 
 
 8
 Regan further contends that, had Local 812 properly investigated the matter, it would have found from his personnel file that he had no warnings concerning job performance between August 1990 and September 1991; and that this might have influenced the arbitrator to rule differently. It is unclear why this would be so. Nevertheless, Regan's file did contain written warnings for excessive absenteeism, and Regan admits he was warned in the February and March 1991 incidents that he had a "bad attitude" and could be written up for insubordination. Finally, Regan admits that he received his notice regarding the September 13, 1991 arbitration on September 3 but did not contact Local 812 until September 10 to find out what the subject of the hearing would be.
 
 
 9
 In sum, Regan has failed to demonstrate that there is some testimony or some document that the union had a duty to procure and submit that would have caused the arbitrator to reach a different decision. For this reason, we affirm the district court's judgment.