Michael BECKMAN, Plaintiff,

v.

UNITED STATES POSTAL SERVICE
and American Postal Workers Un-
ion—New York Metro Area Postal
Union, Defendants.

No. 96 Civ. 3187(PKL).

United States District Court,
S.D. New York.

Jan. 12, 2000.

Shane Henty Sutton, P.C., New York City (Oliver Beiersdorf, of counsel), for plaintiff.

Mary Jo White, United States Attorney, Southern District of New York, New York City (Sean C. Cenawood, of counsel), for U.S. Postal Service, defendant.

O'Donnell, Schwartz & Anderson, P.C., Washington, D.C. (Susan L. Catler, of Counsel), O'Donnell, Schwartz, Glanstein & Rosen, New York City (Asher Schwartz, Joel Glanstein, of Counsel), for American Postal Workers Union—New York Metro Area Postal Union, defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Michael Beckman brings this "hybrid" action, pursuant to section 1208(b) of the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 1208(b), alleging that (1) his employer, defendant United States Postal Service (the "USPS"), impermissibly transferred him from a duty assignment in violation of an existing collective bargaining agreement ("CBA"), and (2) his collective bargaining representative, defendant American Postal Workers Union—New York Metro Area Postal Union (the "Union"), breached its duty of fair representation, implied under the scheme of the National Labor Relations Act, 29 U.S.C. § 159(a), by failing to represent him fairly in redressing his grievance.[1] Both defendants have moved for summary judgment. For the following reasons, defendants' motions are hereby granted.

## BACKGROUND [2]

The USPS employs individuals in craft and non-craft positions. *See* Pendleton Decl. ¶ 2. All craft positions, including mail handler, clerk, and material handler, are unionized, *see* Beckman Aff. ¶ 3 n.1; Lingberg Decl. ¶ 8, while non-craft positions are generally supervisory or management jobs at higher grade levels, *see* Pendleton Decl. ¶ 2; Lingberg Decl. ¶ 9. At the New Jersey International Bulk Mail Center (the "Bulk Center"),[3] where plaintiff was employed prior to the actions that led to this litigation, employees in maintenance craft positions work one of three shifts: Tour 1 (12:00 a.m. to 8:30 a.m.), Tour 2 (8:00 a.m. to 4:30 p.m.), or Tour 3 (4:00 p.m. to 12:30 a.m.). *See* Beckman Dep. at 11. These employees are selected for duty assignments based upon their seniority, as calculated under the relevant collective bargain-

---

1. Plaintiff also invokes the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7101–7904, as a basis for federal jurisdiction. *See* Am. Compl. ¶¶ 2, 16. However, the CSRA does not apply directly to most USPS employees. *See* 5 U.S.C. § 2105(e); *Lafayette v. Frank*, 688 F.Supp. 138, 142 (D.Vt.1988). Because the USPS is "an independent establishment of the executive branch," 39 U.S.C. § 201, its employees are generally not entitled to CSRA protection, *see Schall v. USPS*, 73 F.3d 341, 343 (Fed.Cir.1996) (per curiam). With limited exceptions, the USPS is not bound by federal employment laws that govern other government agencies. *See* 39 U.S.C. § 410(a). Under the PRA, only (1) "preference eligible" postal employees (defined under 5 U.S.C. § 2108(3) to include certain categories of veterans and specified relatives of veterans), (2) supervisors or management employees, or (3) employees engaged in personnel work in other than a purely nonconfidential clerical capacity have the right to seek administrative appeal of an adverse employment action, as provided by 5 U.S.C. §§ 7511–14. *See* 39 U.S.C. § 1005(a)(2), (a)(4)(A); *Simon v. USPS*, 132 F.3d 54, 1997 WL 767509, at *2 (Fed.Cir.1997). In the case at bar, plaintiff has not asserted or in any way indicated that he is a veteran or covered relative of a veteran. The evidence further demonstrates that he is no longer a supervisor, nor did his position or assignment relate to personnel matters. Therefore, since there is nothing to suggest that plaintiff fits any of these categories, his sole avenue of appeal

would have been through the grievance process set forth in the CBA. *See* 39 U.S.C. §§ 1005(a)(1)(A), 1206(b). Accordingly, any claim under the CSRA must be dismissed.

2. Although each of the two defendants, pursuant to Local Civil Rule 56.1, filed a statement of material facts to which they claim there is no genuine issue, plaintiff has neglected its obligation to file a statement controverting the facts set forth by the defendants. Local Civil Rule 56.1(c) provides that "all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Accordingly, the Court must deem all of the facts set forth in defendants' Rule 56.1 statements to be admitted by plaintiff. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998); *Yoran v. Bronx–Lebanon Hosp. Ctr.*, No. 96 Civ. 2179, 1999 WL 378350, at *1 n.1 (S.D.N.Y. June 10, 1999) (Leisure, J.).

3. Bulk Mail Centers are highly mechanized mail processing plants that are part of the National Bulk Mail System. These facilities distribute Standard Mail weighing less than sixteen ounces and periodicals in bulk form, and Standard Mail weighing sixteen ounces or more in both piece and bulk form. *See* USPS, *Bulk Mail Center (BMC)* <http://www.usps.gov/bmc/> (last visited January 5, 2000).

ing agreement. *See* CBA Between Union and USPS ("CBA"), art. 38, § 5.A.3 (Pendleton Decl., Exh. G). Pursuant to the CBA, all vacant or newly-established duty assignments in the maintenance craft are to be filled by the most senior employees. *See id.*

Plaintiff has been an employee of the USPS since March 1975. *See* Beckman Aff. ¶ 3. For over nine years, he worked as mail handler in the Bulk Center. *See id.* He later served as a clerk for the USPS in Bayonne, New Jersey, and subsequently, from 1989 to 1991, as a material handler at the Bulk Center. *See id.* At all relevant times throughout his tenure in these positions, plaintiff was a member of the Union. *See id.*

On March 26, 1991, the USPS promoted plaintiff to the position of Supervisor of Building Services. *See id.* As a supervisor, Beckman was no longer a member of the Union and hence no longer subject to the terms of the Union's collective bargaining agreement with the USPS. *See id.; see also* Lingberg Decl. ¶ 9. Furthermore, by accepting the promotion, plaintiff switched from a craft position to a non-craft position. *See* Beckman Aff. ¶ 3; Lingberg Decl. ¶ 9. Under article 12 of the CBA, an employee who leaves a craft position for a non-craft position will lose all accrued seniority if he later returns to a craft position within the USPS, unless the employee returns within two years from the date he left the craft position. *See* CBA art. 12, § 2.B.2.

Plaintiff served as Supervisor of Building Services for two years. Unfortunately for plaintiff, however, in March 1993, the USPS underwent a restructuring, and plaintiff was informed that his new position was being eliminated.

*See* Beckman Aff. ¶ 4. Under a program entitled "Return to Craft Incentive," plaintiff was afforded the opportunity to resume the position he held prior to becoming a supervisor. *See id.*[4] On May 6, 1993, and again on June 28, 1993, plaintiff formally requested assignment to the maintenance craft position of material handler at the Bulk Center—the same job he held from 1989 to 1991. *See* Beckman Dep. at 24–27; Pendleton Decl., Exh. H. The USPS evidently offered plaintiff the grade level 4 position, which had an annual salary of $33,398, plus a lump sum incentive payment of $7,136 for accepting the reassignment. *See* Pendleton Decl., Exh. I. On July 9, 1993, plaintiff accepted the USPS's offer, and the next day left his supervisory position for his old material handler job at the Bulk Center. *See id.;* Beckman Dep. at 41. In connection with his return to the material handler position, plaintiff submitted a "Maintenance Preferred Assignment Sheet" indicating his preference for various duty assignments. *See* Beckman Aff. ¶ 5; Pendleton Decl., Exh. K. Plaintiff was initially slotted in duty assignment number 131 ("Assignment 131"), which denotes a Tour 2 (8:00 a.m. to 4:30 p.m.) material handler work shift at the Bulk Center, with Mondays and Tuesdays off. *See* Beckman Aff. ¶ 6; Beckman Dep. at 38–39.

Shortly after plaintiff received this assignment, however, two of his bargaining unit cohorts approached their Union Representative, Ronald Massey, and complained that plaintiff should not have been awarded Assignment 131 ahead of them, as

---

**4.** According to Paul Tartaglia, USPS Area Manager of Human Resources for the New York Metropolitan Area, employees whose positions were eliminated under the reorganization were given various options. Some elected to relocate to positions in other areas of the country that would not normally have been available or took the opportunity to apply for promotion to other supervisory positions. Others received six months' pay as an incentive to retire. Still others, including plaintiff, received a lump sum incentive payment and the opportunity to return to a formerly-held craft position. *See* Tartaglia Dep. at 15–16.

they were on the relevant Promotion Eligibility Register ("PER")[5] for a material handler position, and both had more maintenance craft seniority than plaintiff. *See* Massey Dep. at 29–30. Other bargaining unit members complained directly to USPS management. *See* Galbo Dep. at 38–40; Johnson Dep. at 36–40. Later, a union representative informed USPS management that plaintiff had improperly received his assignment due to the fact that he had lost his seniority as a consequence of his two year absence from the maintenance craft, and because there were maintenance craft employees on the relevant PER who should have been selected over plaintiff. *See* Massey Dep. at 34–36.

5. The USPS uses two different registers to fill vacant duty assignments in the maintenance craft: the Preferred Assignment Register ("PAR") and the Promotion Eligibility Register ("PER"). *See* Lingberg Decl. ¶ 11. The PAR is used to fill vacant duty assignments by seniority with employees who want to work different hours and/or days within their current occupational group and level. *See id.* ¶ 12. The USPS will attempt to fill any vacancy off the PAR before looking to the PER. *See id.* If there are no qualified employees on the PAR who have indicated a desire for a particular assignment, the USPS will select employees from off the PER to fill the vacancy. *See id.* ¶ 13. The PER includes employees who desire a promotion to a higher level or a transfer to a different occupational group within their current level. *See id.* Pursuant to articles 12 and 38 of the CBA, when there is more than one qualified individual on a PER, the position is to be filled on the basis of seniority in the maintenance craft. *See* Galbo Dep. at 9–11; Massey Dep. at 91–94.

Plaintiff has suggested that he should have been entitled to Assignment 131 because there was effectively no PER because the PER had not been "graded." *See* Beckman Dep. at 33, 43, 47. Accordingly, he asserts that there exists a genuine issue of material fact as to whether a valid PER existed at the time he was awarded Assignment 131. *See* Pl. Opp. Mem. at 6. However, there is no requirement in the CBA that a PER be graded before it becomes effective, or, for that matter, any prohibition against individuals receiving promotions in the absence of a graded PER. In fact, the CBA does not address grading in any way. *See* Lingberg Decl. ¶ 14. As such, whether the PER at issue was graded or not, the issue is simply immaterial with regard to

After reviewing the situation, on December 10, 1993, USPS management removed plaintiff from Assignment 131, designated him an unassigned material handler, and subsequently replaced him with John Valez–Elias. *See id.* at 47–48; Beckman Aff. ¶¶ 11, 14; Pendleton Decl., Exh. L. During the time he was unassigned, plaintiff retained the Assignment 131 work shift. *See* Pendleton Decl. ¶ 9. Plaintiff was directed to submit bids for other duty assignments, but failed to do so. *See id.* ¶ 9–10. As a result, as it was permitted to do under CBA art. 38, § 5.A.8, the USPS gave plaintiff the only vacant material handler duty assignment at the Bulk Center, a Tour 1 (12:00 a.m. to 8:30 a.m.) work shift. *See id.*[6]

plaintiff's right to Assignment 131, and such a dispute cannot preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) ("[T]he existence of disputed facts that are immaterial to the issues at hand is no impediment to summary judgment.").

Furthermore, plaintiff has admitted in his deposition that ∠he both saw and held the relevant PER materials for Assignment 131. *See* Beckman Dep. at 27–28, 33, 43–44, 47. Although Beckman's affidavit now states that he specifically inquired as to whether a PER existed and was told there was none, *see* Beckman Aff. ¶ 18, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996). It is therefore undisputed that there was a PER, albeit unclear—though irrelevant—whether or not the PER was "graded."

6. Despite the change in work shifts, plaintiff still held a grade level 4 position, with a total annual salary of $33,398. *See* Beckman Dep. at 70–71. In fact, pursuant to CBA art. 8, § 7, the new assignment entitled plaintiff to 10% additional compensation for hours worked between 6:00 p.m. and 6:00 a.m. *See* Beckman Dep. at 71.

Plaintiff immediately complained to his Union Representative, Ronald Massey. *See* Beckman Aff. ¶ 12; Massey Dep. at 54–55. Thereafter, Massey referred plaintiff to Brenda Jackson, the Shop Steward, who helped him file a formal grievance. *See* Beckman Aff. ¶ 12. At each of the preliminary stages, plaintiff's grievance was denied, but was eventually certified for arbitration. *See id.* The hearing was scheduled for December 12, 1995. *See* Beckman Aff. ¶ 13.

Yet, to plaintiff's chagrin, the Union elected to withdraw the grievance prior to the date of the arbitration hearing. Massey explained that the Union's decision was based on its evaluation of the merits of the case and its conclusion that plaintiff would be unable to prevail, given the provision in the CBA that eliminated his seniority. *See* Massey Dep. at 72–73; Beckman Aff., Exh. H. Plaintiff appeared before the arbitrator on December 12, 1995, but was allegedly informed at that point by another Union Representative, Charles Bembry, that the grievance had been withdrawn due to a "conflict of interest." Beckman Aff. ¶ 13.

Although the USPS initially permitted plaintiff to continue working on Tour 2, even after his grievance had been withdrawn, *see* Beckman Dep. at 69; Massey Dep. at 106, 117–18, plaintiff was eventually switched to the Tour 1 night shift in April 1996. Plaintiff asserts that the shift switch has caused him substantial mental anguish and distress, including depression and other physical symptoms. *See* Beckman Aff. ¶ 15 & Exh. I. On May 1, 1996, plaintiff initiated the instant action. Plaintiff served an Amended Complaint on June 10, 1996, alleging a "hybrid" cause of action against the USPS and the Union. *See* Am. Compl. ¶¶ 9–16. Following the close of discovery, both defendants moved for summary judgment.

## DISCUSSION

### I. Standard for Summary Judgment

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Servs. L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995).

In deciding a motion for summary judgment, the Court's function is not to try issues of fact, but instead to determine whether there remain any such issues to try. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In doing so, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129. However, the substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

"A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister,* 859 F.2d at 1112. Hence, the nonmoving party "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Mere speculation or conjecture" will not suffice, *see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990), nor will "reliance on unsupported assertions," *Goenaga*, 51 F.3d at 18. Rather, the non-moving party must provide "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

## II. Plaintiff's "Hybrid" Cause of Action

Plaintiff's Amended Complaint alleges that the USPS violated the CBA by removing him from Assignment 131, *see* Am. Compl. ¶¶ 9–10, 14, and that the Union subsequently breached its duty of fair representation by refusing to represent him in the grievance process, *see* Am. Compl. ¶¶ 11–12, 15–16; *see also DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes*, 386 U.S. 171, 184–86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In the typical "hybrid" action, the employer's duty to honor the collective bargaining agreement is governed by section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, and the union's duty of fair representation is implied from section 9(a) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 159(a). *See DelCostello*, 462 U.S. at 164, 103 S.Ct. 2281; *White v. White Rose Food*, 128 F.3d 110, 113 (2d Cir.1997). However, because the USPS is not an employer

within the meaning of 29 U.S.C. § 152(2),[7] this Court has jurisdiction only pursuant to section 1208(b) of the PRA, 39 U.S.C. § 1208(b). *See Young v. USPS*, No. 86 Civ. 9492, 1990 WL 3181, at *4 (S.D.N.Y. Jan. 11, 1990), *aff'd*, 907 F.2d 305 (2d Cir.1990). As section 1208(b) tracks the language of 29 U.S.C. § 185(a),[8] *see National Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915, 918 (2d Cir.1971), federal courts have consistently applied the principles applicable to suits against non-governmental employers to § 1208(b) actions brought against the USPS, *see Young*, 907 F.2d at 307; *American Postal Workers Union v. USPS*, 766 F.2d 715, 720 (2d Cir.1985).

■ In a "hybrid" lawsuit, an individual employee challenges the result of a union grievance process based on allegations that the union breached the duty of fair representation it owes to each member employee. *See DelCostello*, 462 U.S. at 164–65, 103 S.Ct. 2281; *Vaca*, 386 U.S. at 185–86, 87 S.Ct. 903; *White*, 128 F.3d at 113–14. To prevail, the plaintiff must show (1) that the union breached its duty of fair representation; and (2) that the employer breached the terms of the CBA. *See DelCostello*, 462 U.S. at 163–65, 103 S.Ct. 2281; *White*, 128 F.3d at 113–14. Both elements must be established to prevail against either defendant. *See DelCostello*, 462 U.S. at 163–65, 103 S.Ct. 2281. Therefore, because "the Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against [his] former employer for improper discharge," *Young*, 907 F.2d at 307, if the plaintiff is unable to prove that the union breached its duty of

---

**7.** Subsection 152(2) provides that the term "employer" shall not include, *inter alia*, "the United States or any wholly owned Government corporation." 29 U.S.C. § 152(2).

**8.** *Compare* 39 U.S.C. § 1208(b) ("Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to

the amount in controversy."), *with* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

fair representation, there will be no need to consider whether the employer violated the CBA. *See United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Flanigan v. Truck Drivers Local No. 671,* 942 F.2d 824, 828 (2d Cir.1991).

## A. Duty of Fair Representation

■ A union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Chauffeurs Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 567–68, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (citing *Vaca,* 386 U.S. at 185, 87 S.Ct. 903). *But cf. Vaca,* 386 U.S. at 186, 87 S.Ct. 903 ("We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions . . . unlimited discretion to deprive injured employees of all remedies for breach of contract."). As the Supreme Court has well articulated,

> union discretion is essential to the proper functioning of the collective-bargaining system. Union supervision of employee complaints promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the union. Without these screening and settlement procedures, . . . the costs of private dispute resolution could ultimately render the system impracticable.

*International Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 51, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) (internal citation omitted).

■ Based on this rationale, the duty of fair representation merely obliges a union " 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' " *Regan v. Soft Drink & Brewery Workers Union, Local 812,* 89 F.3d 826, 1995 WL 722862, at *1 (2d Cir. 1995) (quoting *Vaca,* 386 U.S. at 177, 87 S.Ct. 903); *see also Ryan v. New York Newspaper Printing Pressmen's Union,* 590 F.2d 451, 455 (2d Cir.1979). "It is . . . [the] plaintiff's burden to prove the union breached its duty, not the employer's to show that it did not." *Young,* 907 F.2d at 308. Consequently, to succeed on a claim of breach of the duty of fair representation, he must establish two elements. First, the plaintiff must demonstrate that the union's conduct was " 'arbitrary, discriminatory, or in bad faith.' " *Barr v. United Parcel Serv., Inc.,* 868 F.2d 36, 43 (2d Cir.1989) (citing *Vaca,* 386 U.S. at 190, 87 S.Ct. 903). Second, he must show that the Union's acts or omissions "seriously undermine[d] the arbitral process." *Id.* (citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).

■ Plaintiff contends that triable issues of fact exist as to whether the Union breached its duty of fair representation. *See* Pl. Opp. Mem. at 7. The crux of plaintiff's argument is that the Union's failure to pursue his grievance through an arbitration he could not otherwise compel on his own constitutes a breach. *See* Pl. Opp. Mem. at 7–8.[9] Specifically, plaintiff cites

9. Plaintiff's memorandum of law improperly cites a provision in the Federal Service Labor–Management Relations Act ("FSLMRA"), 5 U.S.C. § 7114(b)(1), which does not apply to the USPS. *See USPS v. National Ass'n of Letter Carriers,* 9 F.3d 138, 139 n. 1 (D.C.Cir. 1993) ("The Postal Service is covered by the NLRA, and not the [FSLMRA]."). Under 39 U.S.C. § 410(a), "[e]xcept as provided by [§ 410(b)], and except as otherwise provided in [title 39] or insofar as such laws remain in force as rules or regulations of the [USPS], no

Federal law dealing with . . . employees . . . shall apply to the exercise of the powers of the [USPS]." As such, plaintiff has no standing to invoke 5 U.S.C. § 7114 against the USPS. *Cf. Persons v. Runyon,* 172 F.3d 879, 1999 WL 104427, at *1–*2 (10th Cir.1999) (affirming dismissal of claims under the FSLMRA for lack of standing). Plaintiff's reliance on *Steadman v. Governor, United States Soldiers' & Airmen's Home,* 918 F.2d 963, 966 (D.C.Cir.1990) is similarly misplaced, as *Steadman* was decided under the FSLMRA,

(1) the Union's "unilateral decision to withdraw [plaintiff's] grievance on the day of the arbitration, without any explanation to him," *id.* at 8; (2) an alleged "conflict of interest" arising from the fact that the withdrawal the grievance advantaged John Valez–Elias at plaintiff's expense, *id.* at 9; and (3) the Union's "refusal to give [plaintiff] any information relating to its removal of his grievance," *id.* Having reviewed all the evidence, however, the Court concludes that the allegations contained in plaintiff's Amended Complaint and his papers opposing the summary judgment motions do not raise triable issues of fact as to whether the Union breached its duty. The Court will address each of plaintiff's charges in turn.

### 1. Withdrawal of the Grievance

█ In his affidavit, plaintiff states that he was not informed about the Union's decision to withdraw his grievance from arbitration until "minutes before the arbitration was to begin." Beckman Aff. ¶ 13. He contends that by withdrawing the grievance, the Union "denied [him] the opportunity to have [his] legitimate claims against the [USPS] heard and to be reinstated to [his] former position." *Id.* Plaintiff therefore maintains that the Union "willfully refused to follow through with its undertaking to represent [plaintiff]," "despite the fact that strong arguments existed demonstrating a violation of the CBA." *Id.* ¶ 14. This action, he claims, evidences the Union's bad faith and its decision's arbitrary nature. *Id.*

Yet, it would appear that under the express terms of the CBA concerning seniority and duty assignments, the Union had

ample justification for its decision not to pursue plaintiff's grievance, since there was no evidence that the USPS had breached the CBA. Plaintiff protests that when the USPS removed him from Assignment 131, it breached article 12, section 5.B.3 of the CBA. *See* Pl. Opp. Mem. at 10. This section states, in pertinent part: "No employee shall be allowed to displace, or 'bump' another employee, *properly* holding a position or duty assignment." CBA art. 12, § 5.B.3 (emphasis added). Implicit in plaintiff's argument, therefore, is that his removal was somehow improper.

It is clear, however, that plaintiff was not properly holding the duty assignment at the time of the USPS's decision. Pursuant to article 12, section 2.B.2 of the CBA, plaintiff lost all of his accrued seniority with respect to the maintenance craft by holding the non-craft position for over two years.[10] *See* CBA art. 12, § 2.B.2. Because there were employees on the PER who were qualified for Assignment 131 and whose maintenance craft seniority exceeded plaintiff's, *see* Massey Dep. at 33; Johnson Dep. at 39–40, the USPS was contractually obligated to offer the assignment to employees on the PER before giving it to plaintiff. *See* Lingberg Decl. ¶ 13. Therefore, the USPS's removal of plaintiff from Assignment 131 was indeed proper, and hence the Union was correct in its determination that plaintiff's grievance was not meritorious. In fact, a contrary decision by the USPS would have violated the rights of more senior maintenance craft employees, possibly subjecting it to legitimate grievances. *See* CBA art. 38, §§ 2.F, 5.A.3.[11]

and therefore has no applicability to the case at bar.

**10.** Plaintiff continuously held the non-craft supervisory position from March 3, 1991 until July 10, 1993. *See* Beckman Dep. at 123.

**11.** Plaintiff also argues that triable issues of fact exist as to whether the USPS breached article 6.A.1 of the CBA. This provision states, in pertinent part: "Those employees who occupy full-time, part-time regular or part-time

flexible positions in the regular work force ... on September 15, 1978, are protected against layoff and reduction in force during any period of employment in the regular work force with the [USPS] ... in his or her lifetime." CBA art. 6.A.1. Although plaintiff believes the USPS's action can be characterized as a "layoff," that is clearly not the case. Plaintiff was simply unassigned for a period of time, and later reassigned to a different work shift. He still held the same position,

Deposition testimony from various Union officials further confirms that the Union's decision to withdraw the grievance was based solely on its assessment that its advocates would be unable to obtain a remedy for plaintiff. For example, Charles Bembry, the Union's arbitration advocate, stated that he believed plaintiff's case was devoid of merit, and only certified the grievance for arbitration in the hope that his investigation would uncover "something ... that might help [him] in arbitration." Bembry Dep. at 24. On November 28, 1995—two weeks before the arbitrator was scheduled to hear the case—Bembry advised plaintiff that his grievance "wasn't a very strong case." *Id.* at 38. After consulting with the Union's Bulk Center Director, Ronald Massey, as well as other Union officials,[12] Bembry formally withdrew the grievance from arbitration. *See id.* at 40, 43. Massey confirmed that he advised Bembry to withdraw because, based on the relevant CBA provisions, he "believe[d] that [the Union] couldn't win [the case]." Massey Dep. at 72. Finally, Bembry explained that he did not inform plaintiff of the Union's decision until the morning of the scheduled arbitration because he had difficulty contacting him. *See* Bembry Dep. at 40, 45–46.

■ Based on the totality of the evidence, the Court finds that plaintiff has failed to show that the Union's decision "amounted to conduct and omissions 'so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.' " · *Barr,* 868 F.2d at 43 (quoting *NLRB v. Local 282,* 740 F.2d 141, 147 (2d Cir.1984)). Federal law does not give an employee an absolute right to have his grievance taken to arbitration, regardless of its merit under the applicable CBA. *See Vaca,* 386 U.S. at 191, 87 S.Ct. 903; *Gold v. Local Union No. 888,* 758 F.Supp. 205, 207 (S.D.N.Y.1991). In *Hines,* the Supreme Court clarified the rationale underlying this rule:

'If the individual employee could compel arbitration of his grievance regardless of its merit,' that is, compel both employers and unions to make full use of the contractual provisions for settling disputes by arbitration, 'the settlement machinery provided by the contract would be substantially undermined,' for curtailing the 'power to settle the majority of grievances short of the costlier and more time-consuming steps' might deter the parties to collective-bargaining agreements from making 'provi[sion] for detailed grievance and arbitration procedures of the kind encouraged by [the LMRA].'

*Hines,* 424 U.S. at 567, 96 S.Ct. 1048 (quoting *Vaca,* 386 U.S. at 191–92, 87 S.Ct. 903). Accordingly, the Second Circuit has held that "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1153–54 (2d Cir.1994); *see also Spellacy v. Airline Pilots Ass'n–Int'l,* 156 F.3d 120, 130 (2d Cir.1998); *Ayala v. Union de Tronquistas de Puerto Rico, Local 901,* 74 F.3d 344, 345–46 (1st Cir.1996) ("[T]he duty of fair representation is not a straitjacket which forces unions to pursue

with the same pay and benefits. *See* Beckman Dep. at 71; Massey Dep. at 48; *see also supra* note 6. Plaintiff even conceded as much in his deposition. *See* Beckman Dep. at 144 ("Q: Mr. Beckman, do you believe that your change from assigned Material Handler position job 131 to an unassigned Material Handler position was a layoff? A: No, it wasn't a layoff."). Accordingly, article six has no relevance to plaintiff's situation.

12. Both Linda Noble, the Union's administrative vice president and director of industrial relations, and Anthony Caniano, the Union's executive vice president, advised Bembry and Massey to withdraw the grievance. *See* Bembry Dep. at 40–43; Caniano Dep. at 5–7; Massey Dep. at 45–47.

grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company. . . .").

■ Plaintiff has failed to "set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, or arbitrary exercise of discretion." *Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. 817, 822 (S.D.N.Y.1982). There is no doubt that the USPS was justified in removing the plaintiff from Assignment 131, as the CBA clearly states that all assignments shall be based on seniority. The Union has the right to refuse to take any grievance to arbitration, so long as its decision is made in good faith. Absent evidence of bad faith or arbitrary conduct, the Union's interpretation of the CBA "should be afforded great deference." *Morris v. Local 819,* 954 F.Supp. 573, 580 (E.D.N.Y.1997). Accordingly, plaintiff's conclusory allegations do not demonstrate a lack of good faith on the part of the Union, and thus fail to state a valid claim for relief.

## 2. Conflict of Interest

■ Plaintiff also insists that the Union improperly "gave preference to [John] Valez–Elias" over him and told plaintiff that its decision to withdraw the grievance was based on the existence of a "conflict of interest." Beckman Aff. ¶ 14. However, there is no evidence of such favoritism. Rather, by encouraging the USPS to allow all eligible employees to bid for the position, as required by the CBA, the Union did not advocate for any particular employee, but merely followed the procedures set forth by the CBA. Furthermore, all of the evidence suggests that the Union's decision not to pursue plaintiff's grievance was based entirely on its interpretation of the CBA and its assessment of plaintiff's chances of prevailing in the arbitration. *See supra* at 402–03.

■ Plaintiff's bare allegations of a conflict of interest cannot rise to the level of a breach of the duty of fair representa-

tion. As discussed above, the Court "cannot intercede on behalf of employees who may be prejudiced by a rationally founded decision [that] operates to their disadvantage." *Helmer v. Briody,* 721 F.Supp. 498, 504 (S.D.N.Y.1989). In nearly every situation in which a union intervenes—or elects not to intervene—on behalf of one or more of its members, that decision will inevitably have negative repercussions for other union members. The Second Circuit has thus held that "[a] union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct." *Spellacy,* 156 F.3d at 129 (citing *Haerum v. Air Line Pilots Ass'n,* 892 F.2d 216, 221 (2d Cir.1989); *Jones v. Trans World Airlines, Inc.,* 495 F.2d 790, 798 (2d Cir.1974)). "Indeed, 'a union must necessarily, and without violating anyone's rights, represent employees who have antagonistic interests.'" *Lettis v. USPS,* 39 F.Supp.2d 181, 198 (E.D.N.Y.1998) (quoting *Johnson v. American Postal Workers Union,* 102 L.R.R.M. 3089, 3091, 1979 WL 33357 (D.D.C.1979)); *see also Humphrey v. Moore,* 375 U.S. 335, 349–350, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) (describing a union decision that involved "inevitably conflicting interests"). Accordingly, whether or not the Union faced a choice among competing interests, because its decision to withdraw the grievance was neither arbitrary nor undertaken in bad faith, this claim too must fail.

## 3. Failure to Provide Information

■ Finally, plaintiff maintains that the Union's delinquency in informing him that it had elected not to pursue his grievance and its refusal to provide an adequate explanation constitute a breach of the duty of fair representation. It is beyond cavil, however, that "[t]he failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation." *Lettis,* 39 F.Supp.2d at 197 (citing *Caputo v. National Ass'n of Letter Carriers,* 730 F.Supp. 1221, 1230

(E.D.N.Y.1990)); *see also Tracy v. Local 255, Int'l Union of Electronic, Elec., Technical, Salaried & Mach. Workers,* 783 F.Supp. 1527, 1531 (D.Mass.1992) ("[F]ailure of the union to provide information on the status of a grievance is not indicative of arbitrary behavior in the processing of the grievance itself.... Lack of communication, without more, is insufficient to evidence arbitrary or capricious processing of a claim.").[13] Moreover, plaintiff has not shown that the Union's delay or its alleged failure to provide an explanation for its decision in any way prejudiced him. *See Yakowec v. Niagara Mohawk Power Corp.,* No. 92–CV–1130, 1993 WL 226435, at \*17 (N.D.N.Y. Jun 24, 1993); *see also Bazarte v. United Transp. Union,* 429 F.2d 868, 872 (3d Cir.1970) (finding that a union's failure to inform the plaintiff of its decision not to go forward with his case was insufficient to establish unfair representation where there was no showing of prejudice); *Harrigan v. Caneel Bay, Inc.,* 745 F.Supp. 1122, 1128–29 (D.Vi.1990) ("A union need not inform the employee of his or her grievance's progress or notify the employee that the organization's own effort toward a private resolution of the dispute has ended.") (citations omitted). Consequently, as these allegations also fail to state a claim upon which this Court may grant relief, the Union's motion for summary judgment shall be granted.

**13.** Plaintiff cites *NLRB v. Carpenters Local 608,* 811 F.2d 149, 152 (2d Cir.1987), for the proposition that "a union is not permitted to refuse a request for information based on its own determination that the grievance underlying the request is non-meritorious or that the information sought is not essential." *Id.* at 152. That decision, however, involved issues quite different from the facts in the case at bar. In *Carpenters Local 608,* three members of a dissident group within the union challenged the union's practices with respect to its operation of its hiring hall. *See id.* at 151. The union had denied the dissidents' requests to inspect hiring hall records. *See id.* at 151–52. The Second Circuit held that "[a] union breaches its duty of fair representation ... when it arbitrarily denies a member's request for job referral information,

## B. Breach of the Collective Bargaining Agreement

As previously discussed, *see supra* at 401, because the Union was plaintiff's exclusive bargaining agent, plaintiff must prove that the Union breached its duty of fair representation before the Court can even consider its allegations against the USPS. *See DelCostello,* 462 U.S. at 165, 103 S.Ct. 2281; *Vaca,* 386 U.S. at 186, 87 S.Ct. 903; *Young,* 907 F.2d at 307. "The 'indispensable predicate' of a section [1208(b)] action against an employer is a 'demonstration that the Union breached its duty of fair representation.'" *Flanigan,* 942 F.2d at 828 (quoting *Mitchell,* 451 U.S. at 62, 101 S.Ct. 1559). Thus, plaintiff's case against the USPS "cannot succeed, as a matter of law, in the absence of an essential element of their claim, namely, that the Union breached its duty of fair representation." *White,* 128 F.3d at 115. The USPS's motion for summary judgment is therefore granted and plaintiff's claim that the USPS breached the CBA shall be dismissed.

## III. Plaintiff's Breach of Contract and Promissory Estoppel Arguments

For the first time in this litigation, plaintiff, in his memorandum of law opposing defendants' motion for summary judgment, asserts state law claims against the USPS for breach of contract[14] and

when that request is reasonably directed towards ascertaining whether the member has been fairly treated with respect to obtaining job referrals." *Id.* at 152. Thus, the information at issue in *Carpenters Local 608* pertained to allegations that the union had engaged in unfair treatment in connection with work assignments, and had nothing whatsoever to do with the handling of the grievance itself. In contrast, as set forth above, the case law clearly establishes that a union member has no such entitlement to information on the status of his or her grievance. *See, e.g., Lettis,* 39 F.Supp.2d at 197; *Yakowec,* 1993 WL 226435, at \*17; *Tracy,* 783 F.Supp. at 1531.

**14.** In its reply memorandum, defendant USPS suggests that this Court is without subject matter jurisdiction to decide a state law

promissory estoppel.[15] Both of which claims he maintains are independent from guarantees or protections provided for by the CBA. *See* Pl. Opp. Mem. at 12–14. Plaintiff essentially contends that triable issues of fact exist as to whether an separate and enforceable employment contract was formed by various promises the USPS allegedly made to induce him to relinquish

his position as supervisor and return to the craft position he formerly held.[16]

Nonetheless, plaintiff's Amended Complaint does not include a claim for breach of contract claim or, for that matter, any facts that can be construed as alleging the existence of a common law employment contract. *See* Fed.R.Civ.P. 8(a)(2). Nor does any passage in the Complaint suggest

**15.** Although defendant USPS argues that plaintiff's promissory estoppel claim is barred by principles of sovereign immunity, *see* USPS Rep. Mem. at 10, this argument too is erroneous. *Cf. Grasso v. USPS*, 438 F.Supp. 1231, 1234 (D.Conn.1977) (finding jurisdiction under 39 U.S.C. § 409(a) for a claim of promissory estoppel). Because the PRA constituted a general waiver of sovereign immunity, *see Franchise Tax Board v. USPS*, 467 U.S. 512, 519 n. 12, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), courts must presume that the USPS is " 'not less amenable to judicial process than a private enterprise under like circumstances would be,' " *id.* at 518, 104 S.Ct. 2549 (quoting *Federal Housing Admin. v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940)). *See also Vapne v. USPS*, 101 F.3d 109, 1996 WL 137692, at *1 (2d Cir.1996) (per curiam) (noting that the PRA "constitutes a general waiver of the sovereign immunity of the Postal Service"); *Active Fire Sprinkler Corp. v. USPS*, 811 F.2d 747, 752 (2d Cir.1987) (same). "This presumption may be rebutted only under certain circumstances: (1) when the waiver of sovereign immunity would conflict with a statutory or constitutional scheme; (2) when plain Congressional intent points toward a restrictive reading of the waiver; or (3) when a broad reading would lead to grave interference with an important agency function." *Active Fire*, 811 F.2d at 752. Because the USPS has presented no evidence to rebut the presumption, there is no indication that such immunity has been preserved. *See Mapoma v. USPS*, No. CV–93–4755, 1996 WL 19168, at *2 (E.D.N.Y. Jan. 11, 1996). Furthermore, the federal courts' refusal to continue to recognize sovereign immunity for the USPS "is consistent with Congress'[s] intent to give federal employees essentially the same rights and remedies as employees in the private sector." *Royall v. USPS*, 624 F.Supp. 211, 214 (E.D.N.Y.1985), *aff'd*, 849 F.2d 1467 (2d Cir. 1988). Therefore, there is nothing to prevent this Court from hearing a claim of promissory estoppel against the USPS, provided there is some basis for jurisdiction and the claim is properly pleaded.

breach of contract claim against it, because, under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491(a)(1), jurisdiction over contract claims against the United States exceeding $10,000 lies exclusively in the United States Court of Federal Claims. *See* USPS Rep. Mem. at 9. However, the USPS would ignore 39 U.S.C. § 409(a), which provides that the district courts shall have original jurisdiction over all actions brought by or against the USPS. Although there remains some disagreement, most courts have held that a claim brought against the USPS in its own name is not a claim against the United States and thus is not governed by the Tucker Act. *See, e.g., Licata v. USPS*, 33 F.3d 259, 263 (3d Cir.1994). As such, the USPS, in contradistinction to other federal entities, may sue and be sued on contract claims in the federal district courts. *See Benderson Dev. Co. v. USPS*, 998 F.2d 959, 962 (Fed.Cir.1993) (vacating *Benderson Dev. Co.*, No. 91–CV–794, 1992 WL 210065 (W.D.N.Y. Aug.19, 1992)); *Licata*, 33 F.3d at 263–64; *Continental Cablevision v. USPS*, 945 F.2d 1434, 1440 (8th Cir.1991); *Jackson v. USPS*, 799 F.2d 1018, 1022 (5th Cir.1986); *White v. Bloomberg*, 501 F.2d 1379, 1384 n. 6 (4th Cir.1974); *cf. Martinez v. United States*, 11 Cl.Ct. 830, 831 (1987) (holding that the Claims Court lacked jurisdiction over a contract claim because the USPS is not an "executive department"). *But cf. Peoples Gas, Light & Coke Co. v. USPS*, 658 F.2d 1182 (7th Cir.1981) (finding that § 409(a) does not provide an independent basis for jurisdiction).

**16.** Plaintiff does not dispute that he received everything guaranteed in the written offer, which made no mention of a specific duty assignment. *See* Pendleton Decl. Exh. I & J; Beckman Dep. at 41–42, 70–71. Yet, because the Court cannot consider the merits of this breach of contract claim, the Court makes no finding as to whether the parol evidence rule, *see North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 48 (2d Cir.1999), bars the introduction of evidence regarding alleged ancillary oral promises pertaining to plaintiff's conditions of employment.

a cause of action for promissory estoppel. In fact, the Complaint is couched entirely in terms that imply a federal "hybrid" claim. *Cf. Heaning v. Nynex–New York,* 945 F.Supp. 640, 645 (S.D.N.Y.1996) (Sotomayor, J.) (holding that the plaintiff's repeated references to the CBA undermined his argument that he had established a claim for breach of contract independent from the CBA).

Specifically, plaintiff invokes jurisdiction solely on the basis of the CSRA, 5 U.S.C. §§ 7101 *et seq.,*[17] and the PRA, 39 U.S.C. §§ 1201 *et seq. See* Am. Compl. ¶ 2. Neither provision, however, provides for federal jurisdiction over state common law claims such as these. *Cf.* Fed.R.Civ.P. 8(a)(1) (requiring that the complaint contain a short and plain statement of the grounds upon which federal jurisdiction depends). Moreover, in his Statement of Facts, plaintiff attests that upon being notified that he would be removed from Assignment 131, he "immediately objected to the [USPS] regarding said demotion and removal from the material handler position *by reason of his status as a 'protected employee.'* " Am. Compl. ¶ 10 (emphasis added). He alleged that this action violated article 6.A.1 of the CBA. *See id.; see also supra* note 11. Consequently, his claim appears to be based solely on the CBA. *See* Am. Compl. ¶ 11 ("Pursuant to the terms of the [CBA] the plaintiff is entitled to his position as a material handler with the [USPS] as well as his seniority with the [USPS] dating to March 1975."); *see also Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 28 (2d Cir.1988) (holding that "references to the 'collective bargaining process' left no doubt that the source [of the plaintiff's claim] was federal labor law"); *Jay v. AT&T Corp.,* 187 F.3d 641, 1999 WL 506109, at *1 (8th Cir.1999).

Indeed, the Complaint goes so far as to concede that, as a result of the Union's decision to withdraw his grievance from arbitration, "the plaintiff has *no other remedies available* to resolve this matter and therefore brings this claim before the Court for a just and proper determination." *Id.* ¶ 18 (emphasis added). This statement belies any suggestion that plaintiff ever had a claim based on either an oral contract with the USPS independent from the CBA, or representations made by the USPS upon which plaintiff relied to his detriment. Thus, the Complaint, already once amended, cannot be construed to contain a claim for breach or contract or promissory estoppel, as such claims would obviously represent remedies available outside the arbitration process.

■■■■ The pleading requirements of the Federal Rules of Civil Procedure are designed to provide defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although a complaint need not correctly plead every legal theory supporting the claim, *see Newman v. Silver,* 713 F.2d 14, 16 n. 1 (2d Cir.1983); *Marbury Mgmt., Inc. v. Kohn,* 629 F.2d 705, 711 n. 4 (2d Cir.1980), at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 170 F.R.D. 111, 119 (S.D.N.Y.1997); *see also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 963 F.Supp. 1342, 1359 (S.D.N.Y.1997) (Leisure, J.) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a

---

**17.** Note that the Court has already dismissed any and all CSRA claims on the ground that the CSRA does not apply to the USPS. *See supra* note 1.

brief in opposition to a motion."); *Harvey v. New York City Police Dep't,* 93 Civ. 7563, 1997 WL 292112, at *2 n.2 (S.D.N.Y. June 3, 1997); *Allen v. West Point–Pepperell, Inc.,* 908 F.Supp. 1209, 1224 (S.D.N.Y. 1995); *Coppola v. Connecticut Student Loan Found.,* No. Civ. A. N–87–398, 1989 WL 47419, at *3 n.14 (D.Conn. Mar. 2, 1989) (Cabranes, J.). Accordingly, this Court will not consider claims not pleaded in the Complaint. *See Yerdon v. Henry,* 91 F.3d 370, 370 (2d Cir.1996); *McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 697–98 (S.D.N.Y.1999); *O'Rourke v. Pitney Bowes, Inc.,* No. 95 Civ. 10288, 1997 WL 431091, at *11 n.17 (S.D.N.Y. July 31, 1997); *McNeil v. Aguilos,* 831 F.Supp. 1079, 1086–87 (S.D.N.Y. 1993), *aff'd,* 107 F.3d 3 (2d Cir.1996).

▮▮▮▮▮▮ Ordinarily, this Court would be amenable to a motion for leave to further amend the Amended Complaint to assert these newly-conceived claims.[18] *See Neri v. Coughlin,* No. 92 Civ. 7890, 1993 WL 464687, at *7 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.). However, "[l]eave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion ... for summary judgment, particularly when the new claim could have been raised earlier." *Berman v. Parco,* 986 F.Supp. 195, 217 (S.D.N.Y.1997); *see also Ansam Assocs., Inc. v. Cola Petro., Ltd.,* 760 F.2d 442, 446 (2d Cir.1985); *Barrows v. Forest Labs., Inc.,* 742 F.2d 54, 58–59 (2d Cir.1984); *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 764–65 (S.D.N.Y.1995); *CL–Alexanders Laing & Cruickshank v. Goldfeld,* 739 F.Supp. 158, 166–67 (S.D.N.Y.1990); *Reisner v. General Motors Corp.,* 511 F.Supp. 1167, 1172 (S.D.N.Y.1981), *aff'd,* 671 F.2d 91 (2d Cir. 1982). It is evident that plaintiff concoct-

**18.** The Court is hesitant to agree with defendant USPS's suggestion that these allegations are automatically preempted by the PRA, 39 U.S.C. § 1208. The Supreme Court has held that a state law breach of contract claim is not preempted by federal labor law if the claim can be resolved without having to resort to interpretation of a provision in the CBA, even if the claim requires addressing the same set of facts. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("[A] plaintiff covered by a[CBA] is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a[CBA]."); *Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 38–40 (2d Cir.1997) (finding no preemption where the plaintiff alleged that his employer breached a contract by failing to fulfill oral promises that did not involve interpretation of the CBA); *Shafii v. British Airways, PLC,* 83 F.3d 566, 570 (2d Cir.1996) (remanding action to state court where the plaintiff's breach of contract claim involved a separate agreement that contained no reference to the CBA); *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 25–27 (2d Cir.1988) ("[W]e know of no case holding that a contract between an employer and an individual falls under section 301."); *Lopez v. Time, Inc.,* No. 93 Civ. 5330, 1994 WL 88062, at *4 (S.D.N.Y. Mar. 14, 1992) ("[I]t is not at all clear that the state law contract claim will necessarily involve such interpretation of the CBA as would require a finding of preemption by Section 301."); *see also Trans World Airlines, Inc. v. Sinicropi,* 887 F.Supp. 595, 606 (S.D.N.Y. 1995) ("State laws that provide a right of action to recover for a breach of contract ... are certainly independent of a[CBA]."). In particular, courts have held that § 301 does not necessarily preempt a claim for breach of an oral contract, *see Hernandez,* 116 F.3d at 38–40; *Hallenback v. Anheuser–Busch, Inc.,* No. 97–CV–264, 1999 WL 6921, at *3–*4 (N.D.N.Y. Jan. 5, 1999) (oral assurance of job security), or promissory estoppel, *see Schepis v. Local Union No. 17, United Bhd. of Carpenters & Joiners,* 989 F.Supp. 511, 517 (S.D.N.Y. 1998) (Sotomayor, J.) (finding no preemption where plaintiff's promissory estoppel claim did not "rely on any written provisions in the Union's constitution, by-laws, or on any other contract within § 301's scope"). Moreover, the fact that such state law claims can be "recast and asserted under [one or more] provisions of the CBA" does not necessarily render them preempted, for " 'the existence of a potential CBA-based remedy [does] not deprive an employee of independent remedies available under state law.' " *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 236 (2d Cir. 1997) (quoting *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)). As the issue has not been fully briefed by the parties, the Court declines to comment further on the merits of the USPS's preemption argument.

ed these contract law theories simply to avoid defendants' meritorious summary judgment motions. *See PI, Inc.*, 907 F.Supp. at 765; *CL–Alexanders*, 739 F.Supp. at 166. Accordingly, the Court will not consider the merits of these contentions within the context of the instant motions. Plaintiff's opposition brief thus raises no issues that can preclude summary judgment on any valid claim.[19]

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are HEREBY GRANTED. The Clerk of the Court shall enter judgment dismissing the Amended Complaint in its entirety.

**SO ORDERED.**

---

19. Summary judgment cannot be granted as to these "claims" because, as they are not included in the Amended Complaint, they are not claims within the meaning of Fed. R.Civ.P. 8(a), 10(b), and 56(b). *See Caribbean Wholesales*, 963 F.Supp. at 1359. However, because they are not claims, as previously discussed, they cannot preclude summary judgment with regard to the remainder of the Amended Complaint.